PINCHBACK v. MINING CO.

(Filed December 13, 1904).

1. REFORMATION OF INSTRUMENTS—*Mistake—Deeds.*

A deed which by mistake does not include certain lots may be corrected.

2. DEEDS—*Corporations—Stockholders.*

A deed by one corporation to another recited a resolution of the stockholders of the grantee that the corporation acquire all the property of the grantor, and a resolution of the stockholders of the grantor that a conveyance of all the property of the grantor be executed to the grantee, and all the property of the grantor was conveyed by appropriate recitals, but certain lots were excepted and reserved. On the face of the deed the grantor had no beneficial interest in such lots.

3. PARTIES—*Corporations—Stockholders—Deeds.*

Where a stockholder sued the corporation to compel it to sell lands and distribute the proceeds among the stockholders,

but the defense was that the lands should have been included in a conveyance previously made by the corporation to another, but that by mistake the lands had not been included, the court should have made the grantee of the corporation a party to the suit.

4. DEEDS—*Evidence—Reformation of Instruments—Mistake.*

Where a stockholder sued to compel the corporation to sell certain lands and distribute the proceeds among the stockholders, the stockholders are entitled to introduce parol evidence to show that the lands were not intended to be included in a conveyance previously made by the corporation.

5. CONTRACTS—*Corporations—Stockholders—Estoppel.*

At a meeting between the stockholders of two corporations, statements of the spokesman for the corporation which had agreed to purchase all the property of the other could not have the effect of surrendering the rights of the purchaser as to certain lots belonging to the seller.

6. RECEIVER—*Corporations.*

The fact that a corporation has gone into the hands of a receiver, and that its property has been sold, has no effect as concerns the existence of the corporation.

7. REFERENCES—*Corporations—Stockholders—The Code, sec. 423.*

Where a stockholder sued to compel the corporation to sell certain lands and distribute the proceeds among the stockholders, and the corporation claimed that such lands should have been included in a conveyance previously made by it to another corporation, but that they were omitted by mistake, whereby an issue was raised as to the intention of the parties, it was a proper case for a reference.

8. CORPORATIONS—*Contracts—Evidence.*

Where there was a claim that a contract between corporations had been modified, it could only be substantiated by a showing that the modification was made by act of all the stockholders.

ACTION by J. A. Pinchback against the Bessemer Mining and Manufacturing Company, heard by *Judge T. A. McNeill*

and a jury, at May Term, 1904, of the Superior Court of GASTON County.

The defendant company was on and prior to November 16, 1892, the owner of certain real estate, a portion of which had been surveyed and laid off into building lots. A plat was made showing the location, number, etc., of each lot. Sometime prior to November 16, 1892, the Bessemer Mining Company made a proposition to the defendant company to take a conveyance and assignment of the real estate and all other property and assets of the defendant company in consideration whereof the said Mining Company agreed to pay $50,-000, a part of which was to be applied to the discharge of certain indebtedness of the defendant company and the balance paid in cash, and to issue to the stockholders of the defendant company stock in the said Mining Company to the amount of $325,000 to be apportioned among them as they should determine. The proposition was duly accepted by the stockholders of the defendant company. Thereupon the defendant company executed a deed to the said Bessemer Mining Company—reciting the action of the said company evidenced by a resolution duly adopted at a meeting of the stockholders. So much of said resolution as is material to the decision of this appeal is in the following words: "Whereas, for the purposes of its business, it is deemed advisable for this company to acquire all the property, real, personal and mixed, including all accounts, bills receivable and assets of every name and nature of the Bessemer Mining and Manufacturing Company," etc. The deed further recited that the proposition of the said Mining Company at a special meeting of the stockholders of the defendant company called for that purpose had been duly accepted, and a resolution had been duly passed authorizing the directors, president and secretary to execute "all such deeds of conveyance, bills of sale, inventories, transfers and legal instruments as may be necessary to vest the

title to the property of said company in the Bessemer Mining Company, and to carry into full and complete effect the foregoing action of this company," etc. Following these recitals is appropriate language to convey and transfer to the Bessemer Mining Company: "All the real estate, property and rights of property owned by the said Bessemer City Mining and Manufacturing Company or is in any manner entitled, wheresoever situate and by whatsoever name known and more specifically and particularly the lands   *   *   *   hereafter described, etc., to-wit": Following is a description of the lands conveyed: "Excepting and reserving, however, from the operation of these presents the following town lots and blocks in Bessemer City, N. C., to-wit": (twenty-six lots are thereupon described by block, number, etc.)—"also, the lot on which T. A. McGill now resides   *   *   *   described in the deed to McGill but not yet registered." Then follows a reservation of certain lots conveyed to the Bank at Durham, etc. This deed was duly proven and recorded. It was shown in evidence that the 325 shares of stock were duly issued, of which the plaintiff received 650 shares. The debts were cancelled and the balance of the $50,000 paid and distributed among the stockholders of the defendant company. Since November 16, 1892, the defendant company has transacted no business, held no meeting of its stockholders nor in any manner exercised any corporate powers. The plaintiff was the owner of 375 shares of the stock of defendant company, the certificate of which the jury find has been lost or mislaid. Major Guthrie, introduced by the defendant, testified that he was attorney for defendant company. That the resolutions set forth in the deed were duly passed. That all of the stockholders were present, including plaintiff. That Mr. Cooley and himself undertook to draw a deed in accordance with the terms of the resolution and for the purpose of carrying it into effect. That it was their purpose and intention to so draw it

as to convey all of the property, real and personal, belonging
to the Bessemer Mining and Manufacturing Company. That
J. A. Smith, the secretary and treasurer, had a map showing
the location, etc., of the property. The company had sold off
a number of lots, as shown on the map, and they incorporated
a clause intending thereby to except from the operation of the
deed all the lots which had been sold by the defendant com-
pany. They obtained the information in regard to the num-
ber of lots sold from Mr. Smith; he called out the lots which
he said had been previously sold, and they, relying upon him,
excepted. from the operation of the deed the twenty-six lots
mentioned in the complaint. If they had been notified by
Mr. Smith that the lots had not been sold, they would not have
excepted them. The deed was delivered to the Mining Com-
pany and he heard no more of it until a short time before this
suit was instituted. That the witness and Mr. Cooley read
the deed over to the parties and explained it. That defendant
company executed the deed with full knowledge that the lots
described in the complaint had been excepted and the Mining
Company accepted it with like knowledge. The said Mining
Company is not complaining of the excepted lots so far as
witness knew. Major Guthrie further testified that Mr.
Cooley and himself excepted the lots because they thought
that they had been sold and conveyed to third parties, as was
the case with the other deeds excepted from the operation of
the deed.

Mr. J. A. Smith was introduced by the plaintiff and testi-
fied that he stated to Major Guthrie and the stockholders of
the defendant company when the stockholders of both com-
panies were present for the purpose of purchasing and selling
the property, that the twenty-six lots had been sold before
that day and under what circumstances, and it was agreed by
all of the stockholders of both companies there assembled in
meeting, with a full knowledge of all the facts, that said

twenty-six lots should be reserved from the operation of the deed. The company had contracted to sell the lots to Captain Runlett. He was present at all of the meetings. He had bought sixty or eighty shares of stock of the company and was entitled when the shares were paid for to one lot for each share. The company had agreed by written contract to convey them to him. Witness made known the contract to the stockholders—explained it fully. Mr. Carrington, who was spokesman for the Mining Company, said that they did not care for the lots—wanted the land for the minerals. The stockholders said that the contract with Runlett should be carried out. Witness gave the written contract to the Mining Company, books, papers, etc., at the time the deed was made, and has not had them since—does not know what became of them. Carrington said that the Mining Company had no stock to sell at fifty cents on the dollar. He suggested that the only way to carry out the contract was to reserve the lots from the deed, and that witness gave some of his stock to Runlett for the defendant, and to reserve enough lots to make the contract good. Runlett had paid a part of the amount due for the stock. It was unanimously agreed that the defendant company should carry out its contract with Runlett and that witness should give him some of his individual shares for the company, that when the same were fully paid for the defendant company should deed him the twenty-six lots, which should be reserved from the operation of the deed. All understood this. The Mining Company were eager to get the property—wanted it for mining purposes. Said that it was worth $3,000,000. The defendant company on the day before the deed was executed made a deed to Runlett for forty-three lots, which represented a part of the lots it was to convey to him, being all of the lots which he was able to pay for that day. This represented as many shares as he had paid for. When Major Guthrie drew the deed, witness told them that

twenty-six lots described in the complaint had been sold and should be excepted from the deed in accordance with the agreement. It was agreed that everything that the old company had should be conveyed to the new company. Runlett did not pay for the shares and lots; he died some four years afterwards. The contract fell through. Witness told General Carr, the president of the company, that Runlett had not paid for the lots, but as he had accounted to the company for the stock he was entitled to them and asked him to make me a deed for the lots. That he is not now contending for the lots but thinks that they should be sold and the proceeds divided between the stockholders. General Carr said that he thought witness was entitled to them. Witness did not give in the lots for taxation; had not been consulted about the matter and does not consent or desire that the company should set up the defense that it has or that the lots should be conveyed to the Mining Company; it has no right to same and has not made any claim for them. This action is brought by the plaintiff to compel the defendant company to sell the said lots and to divide the proceeds between the stockholders, to have a receiver appointed, etc. The defendant in its answer says that it is advised, informed and believes that the defendant company does not own any property, assets or effects which should be sold or distributed among its stockholders. That the exception from the operation of the deed of the twenty-six lots described in the complaint was the result of a mutual mistake of the parties and the draughtsman and that the deed should be corrected in that respect. The defendant upon the whole evidence moved for judgment of nonsuit, which was denied and defendant excepted. The Court submitted to the jury the following issue in regard to the alleged mistake: "Were the lots described in the complaint excepted from the conveyance by the mutual mistake of the Bessemer City Min-

ing and Manufacturing Company and the Bessemer Mining Company?"

The defendant then asked the Court to charge the jury: "If the jury shall believe from the evidence the defendant company contracted to sell and to convey to the Bessemer Mining Company all of its property of every description; that it was represented to Major Guthrie and Mr. Cooley, the attorneys instructed to draw the deed, that the twenty-six lots described in the complaint had been sold; that by reason of this representation, which was made by the secretary of the defendant company, the said twenty-six lots were excepted from said deed; that but for this representation the said twenty-six lots would have been conveyed by said deed, and therefore the jury will answer the fifth issue 'Yes.'" This instruction was refused and the defendant excepted. From a judgment upon the verdict the defendant excepted and appealed.

*Osborne, Maxwell & Keerans* and *C. E. Whitney,* for the plaintiff.
*Burwell & Cansler,* for the defendant.

CONNOR, J., after stating the facts. The defendant was entitled to the instruction asked. It was not alleged that the officers of the defendant company did not know that the lots were excepted when they signed the deed, but that the insertion of the exception was the result of Mr. Smith's mistake in saying to the draughtsman that the lots had been conveyed. It is clear how the mistake was made. Mr. Smith was evidently not advertent to the difference between the status of the twenty-six lots as it existed and the status of those which had been in fact conveyed. Major Guthrie testifies that if he had been informed as to the real condition of the title to the lots

he would not have excepted them from the operation of the
deed. If the jury accept his testimony there can be no ques-
tion in respect to the equity for correction. If one sign a
deed supposing it to convey black acre, and the insertion of
white acre was purposely made by the draughtsman, it is
fraud in the *factum.* It is not the "act and deed" of the
party signing. *Lee v. Pearce,* 68 N. C., 76. If the insertion
of white acre was caused by the mutual mistake of the parties
under an erroneous impression that it was included in the
negotiation, equity will give relief, not upon the ground that
both parties were ignorant of the fact that it was included in
the description, but that *it was so included* by mistake. Ordi-
narily the mistake will be shown by extrinsic evidence.
When, however, the terms of the negotiation—the contract
pursuant to which the deed is executed—is inserted in the
deed as an essential recital as, for the purpose of showing the
power vested in the person signing, and the description of the
property is inconsistent with such recital, a court of equity
will make the correction upon inspection of the deed. "When
the instrument purports to carry into execution an agreement
which it recites, and exceeds or falls short of that agreement,
there is no difficulty in rectifying the mistake; for then there
is clear evidence in the instrument itself that it operates be-
yond its real intent. If, however, there is no recital of any
agreement, but a mistake is alleged and extrinsic evidence
tendered in proof that it was made, the limits of the equity
for correction are most difficult to define. The *prima facie*
presumption of law is that the written contract shows the ulti-
mate intention, and that all previous proposals and arrange-
ments, so far as they may be consistent with that contract,
have been deliberately abandoned. It seems, however, that
the instrument may be corrected if it is admitted or proved
to have been made in pursuance of a prior agreement by the

terms of which both parties meant to abide, but with which it is in fact inconsistent, or if it is admitted or proved that an instrument intended by both parties to be prepared in one form has, by reason of some undesigned insertion, or omission, been prepared or executed in another." Adams Eq., 109; *Vickers v. Leigh,* 104 N. C., 248; *Fort v. Allen,* 110 N. C., 183 (191). If the defendant had rested its defense upon the recitals in the deed and asked for correction, or relied upon the recitals as a defense to the plaintiff's demand, we are of the opinion that the Court should have either made the Mining Company a party, so that the title should be settled before a decree was made or dismiss the action. A court of equity will not compel a trustee to sell a doubtful title, especially where it is apparent upon the face of the bill that by bringing in other parties the title may be settled before decree. The plaintiff, however, was entitled to introduce evidence to show that in truth the recitals did not set forth the real contract, or that, as contended here, the contract set out in the recitals was modified and that the deed, taken in all of its parts, correctly expressed the purpose and intention of the parties. Certainly, either upon the face of the deed or upon Major Guthrie's testimony, if accepted by the jury, the defendant company had no beneficial interest in these lots. The question thus arises, what effect Mr. Smith's testimony has upon the rights of the parties. He concurs with Major Guthrie in many respects, but goes further and says that he explained to the stockholders of both companies the status of these twenty-six lots—that the defendant company had made a contract with Runlett by which he had subscribed for certain shares, which when paid for entitled him to twenty-six lots. That Mr. Carrington suggested that the lots be excepted so that the company should be in a position to carry out the contract. That he gave the written contract with Runlett to

the secretary of the Mining Company.  It would seem clear that under the contract expressed in the resolutions the purchase-money due by Runlett belonged, when paid, to the Mining Company.  This was recognized by Mr. Smith when he delivered the writing to the secretary.  The exception of the lots from the operation of the deed, from this point of view, left the legal title in the defendant company for the purpose of conveying to Runlett, when he complied with his contract, the purchase-money going to the Mining Company.  Runlett having failed to carry out his contract, it would seem that they should be conveyed to the Mining Company.  Mr. Smith, however, says that it was understood that he was to transfer to Runlett, when paid for, some shares belonging to himself. It is not very clear what were the terms of this understanding, or what was done by Mr. Smith.  He says, however, that Runlett never took the shares.  Whether the contract made by the defendant company with the Mining Company was modified by the conversations testified to by Mr. Smith is not very clear.  While it is true, as contended by plaintiffs, that unless expressly required by the by-laws, it is not necessary that a written record of the proceedings of the stockholders' meeting be made, and that they may be proven by parol. It is also true that before the solemn acts of a corporation, especially when contractual, can be set aside, it must appear that a meeting was held and that the stockholders acting as such voted to do so.  *Duke v. Markham,* 105 N. C., 131, 18 Am. St. Rep., 889. It would endanger the integrity of corporate contracts if, after being solemnly made and reduced to writing in the form of resolutions, they could be changed and modified by mere conversational statements of the stockholders.  We should require very strong and satisfactory proof, both as to the manner and clearness of such conduct, before giving it such effect.  The remarks of Mr. Carrington could not be given the effect of

surrendering the rights of the Mining Company in the property. It is true that Mr. Smith says that all parties assented to the exception of the lots. Major Guthrie says the same, but it is evident that they did not understand such consent in the same way. It seems that the defendant corporation has gone into the hands of a receiver and its property sold. This, of course, does not affect the existence of the corporation. The officers of the defendant corporation being, as they say, convinced that their corporation does not own any beneficial interest in the lots, very properly brought the facts to the attention of the Court—they could not have done less when called upon by the plaintiff to sell property which they do not believe belongs to them. It is not material that Mr. Smith does not wish the defense made. They, in justice to themselves, could not have done otherwise. There are a number of exceptions to the introduction of testimony which, in our view of the case, are not material. We are of the opinion that the judgment should be reversed and a new trial ordered. If the defendant company wishes to have the deed corrected, we think, first, that in the absence of any parol evidence sufficient appears on.the.face of the deed to entitle it to have a decree; second, that if the plaintiff seeks to repel this equity by showing by parol evidence that there was a modification of the contract by the stockholders of both corporations, he should be required to show clearly that such modification was made by the act of all of the stockholders; third, if the defendant company relies upon the equity to have the title settled before any sale is made, all parties in interest should be brought before the Court. In the present condition of the title neither corporation can sell the lots for their face value. It would seem that this case is a proper one for a reference under the provisions of section 421, subsection 5, of The Code. It was one of which a court of equity had exclusive jurisdiction prior to

1868. The Mining Company should be made a party, to the end that a final decree may be made settling the title. In view of the peculiar condition of the appeal neither party will recover costs.

New Trial.

WALKER, J., did not sit on the hearing of this case.

DOUGLAS, J., concurs in the result only.