Battle, J.
 

 Many questions are presented by the pleadings upon the construction of the will which is now before us. It was evidently written without the assistance of counsel, and needs all the aid which, can be derived from that circumstance, to enable us to give effect to the wishes of the testator. It affords evidence of itself, that it is the will of an old man, whose numerous children liad all grown up, most of them had married and had issue, and several of them had died, leaving families of children. It appears, from the admitted allegations of the bill, that most of the slaves, and some of the property bequeathed and devised to the legatees and de-visees respectively, had been advanced to them, by the testator, many years before the will was made. We mention these things, because we have the right to look to the testator’s family and the condition of his property at the time when his will was written, in order to fix a construction upon it. See
 
 Bivens
 
 v. Phifer, 2 Jones’ Rep. 436, and the cases there referred to.
 

 
 *427
 
 Having premised these general rules, we proceed to answer the questions in the order in which they are presented in the hill.
 

 1. The first question presented for our consideration is, whether Hugh "Woods is entitled to a bed and furniture, under the first item of the will. The bequest to him is of certain slaves by name,
 
 “
 
 also one bed and furniture, and a negro girl by the name of Kizza,” &c. He admits that he had received the slaves, and also a bed and furniture, as gifts from his father, long before the making of the will, and he sets up no-claim for the slaves under the bequest, but insists that he is entitled to another bed and furniture, because the legacy is a general one, and therefore, not discharged by the- reception of an article of the same kind long before.
 

 Eor the reason assigned for the claim, we think it must be-allowed.
 

 2. The cases referred to by the counsel of Lambert "Woods, show clearly, that he is entitled to- the- tract of land on which the testator “lived and resided” at the time of his death. It consisted of several distinct parcels, and was occupied and cultivated by the devisor as one plantation.
 
 Bradshaw
 
 v.
 
 Ellis,
 
 2 Dev. and Bat. Eq. 20;
 
 Bolick
 
 v. Bolick, 1 Ire. Rep. 244;
 
 Stowe
 
 v. Davis, 10 Ire. Rep. 431.
 

 3. There can be- no- doubt that David McKee is, in right of his wife, entitled to the child of Sook, born in the testator’s life-time. The general rule is such as is contended by those who oppose the claim of the legatee ; but there are two circumstances which prevent its application in the present instance. The testator had made a parol gift of Sook, to his son Eli, many years before, who, upon the marriage of his daughter Lucy with David McKee, made a similar gift of the girl to her. Eli Woods died, and by his will confirmed the gift, and David McKee kept the girl, claiming her as his own for more than three years before the testator’s death. His will also refers to, and confirms, that of his son Eli ; hence, it follows that the child of Sook, which was born after Eli’s death, was the property of the legatee under his father’s will,
 
 *428
 
 as well as under his will. Moreover, the bailment of the slave was terminated by the death of Eli, and the possession of her by the legatee, for more than three years, gave him a title to her, and all her increase born during such possession.
 
 Powell
 
 v. Powell, 1 Dev. and Bat. Eq. 379;
 
 Richardson
 
 v. Pridgen, 8 Ire. Eq. 153.
 

 ¿. The bequest in the fourth item, of negro David to John Woods, deceased, would bo void, were we not at liberty to construe it as a confirmation of the parol gift made by the testator to his son John, in John’s life-time. Such was undoubtedly the intention of the testator in many of the bequests made to his living children, and we cannot see any reason why it may not be carried into effect in this, as well as in the other instances.
 

 •5. Mary Rhew is entitled, under the bequest in tile fifth item, to the general legacy of one hundred dollars. The specific bequest of the slaves was a mere confirmation of previous parol gifts.
 

 6. Mary Rhew is expressly excluded from any share in the residue given in the 10th item of the will, and the part to which, as one of the children, she might have been otherwise entitled, is expressly given by the testator to her children by her first husband, William Hall. It seems there was no issue of her last marriage. ,
 

 7. The slaves bequeathed in the sixth item, to Elizabeth Hall, deceased, to her and the heirs of her body, were advanced to her and her husband many years before, and the bequest is operative, so far only as to confirm such gifts. As the testator himself explains that, by heirs of her body, he meant her children now living, and mentioned her as being dead, his intention is clear to give the children what she would have taken if alive ; and in that view, they have a right to the general legacy of one hundred dollars given in that item.
 

 8.The children of Elizabeth Hall are also entitled to to the slaves mentioned in the eighth item. The testator having noticed that their mother was dead, it is manifest, that he intended the children to take in her stead; and as the bequest
 
 *429
 
 is in the alternative, to her
 
 or
 
 them, there is nothing to prevent them from taking it. They are also entitled to a share of the residue, unless the slaves given to them by this item, shall equal, or exceed in value their proportion of the testators “ estate.” If there ho an excess of value they are to refund it. By his estate, the testator here means, what he had not otherwise disposed of by his will, and left to fall into the residuum. Nearly all the slaves given by the will, were mere confirmations of previous parol gifts, and of them, he did not wish any account to be rendered. Some other devises and bequests are made, which are not required to be valued, and of which, we therefore conclude, that he did not wish any account to be taken in the division of the residue. But the slaves bequeathed in this item, are required expressly to bo valued, and that value is directed to be accounted for in the division of the residue. That value then must be added to the value of the residue, in order to ascertain the proportions to which Elizabeth Hall’s children are enlitled. The construction contended for by the other legatees, that the amount of the residuum is to be ascertained without these slaves, and then, that the children of Elizabeth Hall are to take the slaves in payment of their share of the residuum, is altogether inadmissible, because it would defeat that equality in the division of his
 
 “
 
 estate,” indicated in the eighth item of his will.
 

 9. The preference given by the ninth item to the testator’s grand-daughters, Adeline and Elizabeth "Woods, in the distribution of the residue is, by an obvious construction, confined to the division between them and their brothers and sisters, of the share to which they all may be entitled. This view is made clear by the intention apparent from the latter part of the eighth and the tenth items, to have an equal division of the residuary estate between the testator’s living, and the families of his deceased, children.
 

 10. From what wo have already said, it will appear that our opinion is, that the residuum, including the value of the slaves given specifically to Elizabeth Hall’s children, is to be equally divided
 
 per stirpes
 
 between the testator’s living chil
 
 *430
 
 dren and the children of his deceased children, excluding therefrom his own son, William Woods, and his daughter Mary Rhew, but putting the children of the latter as legatees in her place, to take among them one share.
 

 There must be a reference for the purpose of taking the necessary accounts, with a view to the distribution of the testator’s estate according to the principles announced in this opinion.
 

 Pee Oueiam. Declare accordingly.