SARAH TAYLOR and others v. JANETTE MARIS and others.

*Wills—Tenancy in Common— Survivorship—Parol Testimony, when admissible to explain instrument—" So forth "—Ambiguity, latent and patent.*

1. " I give to my four daughters the plantation on which I now live. They may sell the land and divide the money, or one may sell to another, but they must not divide the land. * * * If any of my daughters die without issue, their portion is to be equally divided among the three survivors, &c."; *Held*, there is no direction that the land shall be sold, but only that the devisees may sell if· they wish to do so. And hence the land is not converted into personalty by the terms of the will.

2. *Held further :* Upon the death of the testator the daughters became seized as tenants in common of a fee simple estate defeasible upon the death of· any one of them without issue.

3. And on the death of one, her portion goes to her three sisters ; and upon the happening of this contingency the words of the will are satisfied and a succession of survivorships excluded.

4. Testimony offered to explain the intention of the testator in the use of the " &c.," and to show that the portion of each daughter dying was to go to the survivor or survivors, was properly ruled out. It is a patent ambiguity arising on the face of the instrument and a question for the court.

5. Parol evidence is admissible only where there is a latent ambiguity arising *dehors* the will—as to the person or thing meant to be described, or to rebut a resulting trust.

(*Hilliard* v. *Kearney*, Busb. Eq., 221, cited and approved).

SPECIAL PROCEEDING for sale of land for partition, commenced before the clerk, and heard at Fall Term, 1883, of ORANGE Superior Court, before *MacRae, J.*

The plaintiffs allege that they and the defendants are the heirs-at-law of Eliza Carden, who died intestate in the year 1882, and as such are entitled as tenants in common of a tract of land descended from the intestate, situate in Orange county on the waters of Back creek, adjoining the lands of John Carden, John McCrack·n and ·thers, known as the " Cox place,"

containing about one hundred and eighty acres. They further allege that they and the defendants are also the heirs-at-law of William Maris, who died in the county of Orange in the year 1864, leaving a last will and testament which was duly proved and recorded at August term, 1864, of the court of pleas and quarter sessions of said county, and that they and the defendants as such are entitled as tenants in common, of a tract of land in said county lying on the waters of Eno river, adjoining the lands of Samuel H. Hughes, John Thompson, Alexander Anderson, and Mrs. Annie Hughes, containing four hundred and sixty acres more or less.

The defendants made no objection to the sale of the land descended from Eliza Carden, and none of them, except Frances Jones and her husband Thos. J. Jones, objected to the sale of the Maris tract, and they filed their answer denying that they were tenants in common, with the other parties to the petition, of that tract of land, and alleged that the said Frances was sole owner thereof, by virtue of the sixth item in the will of William Maris, which is as follows:

"I give and bequeath to my four daughters Martha, Eliza, Emily and Frances, the plantation on which I now live. They may sell the land and divide the money, or one may sell to another, but they must not divide the land. I also give and bequeath to my daughters Martha, Eliza, Emily and Frances, (certain slaves, naming them). If any of my daughters die without issue their portion is to be equally divided among the three survivors, &c."

The question of sole seizin of Frances Jones being thus raised by her answer, that issue was sent up to the superior court to be tried, and at fall term, 1883, the parties having agreed that the parties to the action are the heirs-at-law of William Maris, and that the point of controversy between them was the construction of the said sixth item of the will of said Maris, the question was submitted to the decision of the court.

On the trial it was conceded that the daughters of the testator mentioned in the sixth item of the will, to-wit, Martha, Eliza

and Emily were all dead without issue, having survived their father the testator—the said Emily dying first, Martha next, and then Eliza, leaving Frances Jones the sole survivor of them all.

The defendants, Jones and his wife Frances, offerred to show by the draftsman of the will that the testator's intention was, that the sole survivor of the four sisters should have the whole of the land upon the death of the other three without issue, and that was what was intended by the character " &c.," at the end of the sixth clause. But His Honor, holding that such evidence was incompetent, ruled it out and the defendants excepted.

It was insisted by these defendants that Frances, as sole survivor of her sisters, was entitled to the whole of the land; and if not, to the one-third thereof upon the death of her sister Emily. It was also contended by them that in no event were the plaintiffs entitled to any part of the land, as by the terms of the will, the same was converted into personalty and goes to the personal representative, and not to the heirs-at-law of the deceased daughters.

The court adjudged that Frances Jones was not seized in fee-simple absolute of the tract of land devised in the sixth clause of the will of William Maris, but that upon his death the four daughters, Martha, Eliza, Emily and Frances became seized absolutely of the land as tenants in common, and upon the death of Martha, Eliza and Emily, their shares in the land descended to their brothers and sisters in general, or their issue, in equal proportions. From this judgment T. J. Jones and wife Frances appealed.

*Mr. A. W. Graham,* for plaintiffs.
*Messrs. Graham & Ruffin,* for defendants.

ASHE, J.   We concur with His Honor in holding that there is no foundation for the position taken by the defendants, that the land devised in the sixth item of the will of William Maris was converted into personalty, and therefore the plaintiffs could not sustain their petition. There was no conversion in fact and

none in equity, for there is no direction in the will that the land shall be sold, but only that the devisees may sell if they shall choose to do so.

But we do not concur with His Honor in the further construction he has put upon this sixth item of the will. His construction, we presume, was based either upon the idea that the last clause in that item of the will, limiting the portion of any of the testator's daughters, who might die without issue, over to the other three, applied only to the bequest of the slaves and not to the devise of the land; or, that the contingency upon which the limitation was to take effect had reference to the death of the testator, and as neither of them died in his life-time, their estates became absolute upon his death. Both views, in our opinion, are erroneous.

The former, because after the first clause of the "item" devising the land, there is a full stop, and after the bequest of the slaves, there is another full stop; and then follows the clause creating the contingent limitation. If the last clause had been separated from the second by a comma, we should have concurred in His Honor's construction, but the last clause is an independent sentence and has no more reference to the one clause than the other. It is general in its terms and broad enough to embrace both the devise and bequest, and we are of the opinion it was intended to embrace all the property disposed of in that "item" of the will.

And the latter view we think erroneous, because the rule of construction laid down in the case of *Hilliard* v. *Kearney*, Busb. Eq., 221, has no application to this case. The rule laid down in that case and others that might be cited, is, "where the estate is defeasible, and no time is fixed on at which it is to become absolute, and the property itself is given and not the mere use of it, if there be an intermediate period between the death of the testator and the death of the legatee, at which the estate may fairly be considered absolute, that time will be adopted. * * * But if there be no intermediate period, and the alternative is either to adopt the time of the testator's death or the death of

the legatee, generally, at sometime or other whenever it may happen, as the period at which the estate is to become absolute, the former will be adopted, *unless there be words to forbid it,* or some consideration to turn the scale in favor of the latter."

In the will under consideration there are words which forbid the reference of the contingency of *dying without issue* to the death of the testator. The will, after devising to testator's four daughters the plantation on which he lived, proceeds, " they may sell the land and divide the money or one may sell to another," giving to them a power over the land which they could not exercise until after his death. They could not sell before the title vested in them, and no title could vest until after the death of the testator. It follows, then, that the happening of the contingency is referable to the death of the devisees, and upon the death of the testator they become seized as tenants in common of a fee simple estate defeasible upon the death of *any one* of them without issue. The words of the will being that " if *any* of my daughters die without issue, *her* portion is to be equally divided among her *three sisters,*" necessarily, by every reasonable construction, confine the survivorship to the death of the first daughter who might die, and exclude a construction of a succession of survivorships to the last surviving sister. For, upon the death of one, her portion is to go to her three sisters, and when two of them die, the words of the will cannot be applicable to the two who are left. When one died and her moiety went to the three sisters, the words of the will were satisfied, and there was no further survivorship. *Hilliard* v. *Kearney, supra.*

That being so, then, when Emily died her moiety survived to her three sisters to be equally divided between them, by which Frances Jones, the defendant, became seized absolutely of one-third of the land devised; then, when Martha died, her moiety, not surviving, went to her sisters Eliza and Frances and her brothers and other sisters and their respective representatives; and so, when Eliza died her moiety went to Frances and her brothers and sisters and their respective representatives.

But the defendants contended that the character " &c." at the

conclusion of the sixth "item" of the will, shows that it was the intention of the testator to give over the portion of each daughter, as they might successively die without issue, to the survivors, and that all being dead without issue except the defendant Frances, she was entitled to the whole estate absolutely, and to show that that was the intention of the testator by the use of the "&c." the defendants offered the testimony of the draftsman of the will, but the evidence was ruled out by His Honor, and the defendants excepted.

There is no error in the ruling of His Honor. "It is well settled that parol evidence is not admissible to supply any omissions or defects in a will, which may have occurred through mistake or inadvertence. 1 Redfield on Wills, ch. 10, §37, sub-divs. 3, 4, 5; 2 Lomax on Executors, 11; *Higgins* v. *Carlton*, 28 Md., 115.

The only cases in which extrinsic evidence is admissible to show the intention of the testator are where there is a latent ambiguity, *e. g.*, where there is a devise to a person by name, and there are two or more persons of that name; or where there is a devise or bequest of a thing, and there are more than one answering the description, and there is no clue afforded by the will to point out the real person or object of the testator's bounty.

But the "&c." in this will is not an ambiguity of that nature. It is a patent ambiguity, which is defined to be such as arises on the face of the will itself, from the uncertainty of the language used or the vagueness of the description or expression; and this can only be explained by the context and sound sense of the instrument.

In *Man* v. *Man*, 1 Johns., Ch. Rep., 231, Chancellor KENT lays down the rule. He says " it is a well settled rule that seems not to stand in need of much proof or illustration, for it runs through all the books from Cheny's case (5 Co. Rep., 68) down to this day, that parol evidence cannot be admitted to supply or contradict, enlarge or vary the words of a will, nor to explain the intention of the testator, except in two specified cases; 1st, where there is a latent ambiguity, arising *dehors* the will, as to

the person or subject-matter meant to be described; and, 2d, to rebut a resulting trust. All the cases profess to go upon one or the other of these grounds."

And Mr. REDFIELD (in vol. 1, ch. 10, §37) says: "Perhaps a solitary *dictum* may be met with (for there are volumes of cases upon wills, *immensus aliarum super alias cumulus*) in favor of the admission of parol evidence to explain an ambiguity or uncertainty appearing on the face of a will, though LORD THURLOW says 'there is no such case; if there be, we may venture to say it is no authority.' If a will be uncertain or unintelligible on its face, it is as if no will had been made, *quod voluit non dixit.*"

There is error. Let this be certified to the superior court of Orange county that further proceedings may be had according to law and in conformity to this opinion.

Error.                                Reversed.