Y. F. CECIL ET ALS. v. JOHN A. CECIL ET ALS.

(Filed 18 April, 1917.)

**1. Wills—Interpretation—Intent—Equality of Division.**

A testator owning and living on a 200-acre tract of land and owning a valuable city lot at the time of making his will, and who afterwards acquired a 7-acre tract of land, provided for his eight children by the first and second marriage as follows:    To two of his sons, 40 acres each, which he had marked off from the 200-acre tract, valued at $350 each; $350 to each of his three daughters from his personalty, which was found to take it all; for the remaining three sons, "the land to be divided . . . each tract valued at $350 apiece, the remainder equally divided among my eight children." The two sons to whom the designated and marked lands were devised took possession in the testator's lifetime. *Held*, the intent of the testator was an equality of division among his eight children, and the division intended among his three sons was of the remainder of his 200-acre home tract, leaving as the remainder to be equally divided the town lot and the 7-acre tract.

**2. Wills—Interpretation—Intent—Findings of Court.**

Extraneous findings of the court as to the valuation of the testator's property in getting at his viewpoint in interpreting his will is allowable in proper instances, but not controlling when remaining property is left for a further division.

APPEAL by defendants from *Webb, J.*, at November Term, 1916, of DAVIDSON.

S. A. Cecil died leaving two sons, C. A. Cecil, Yancey Cecil, and a daughter, Julia A. York, by the first wife; and three sons, Alpheus Cecil, Barna Cecil, and John A. Cecil, and two daughters, Leovina and Daisy Cecil by his second wife. He left the following will:

*In the Name of God Amen.*                                June 25, '84.

This is my last will and testament.  1st, I will to C. A. Cecil the tract of land he lives on, 40 acres, more or less.  Also to Yancey Cecil the tract of land he lives on, the line to run as I have mark, 40 acres, more or less; each farm is valued at $350 a peace; and also to Julia A. York and her heirs $300.  Now, I will to my wife, Nancy Cecil, all my lands and horses, cattle, hogs and money (after my few debts is paid), as long as she remains my widow; after her death the Land to be divided between Alpheus Cecil, Barna Cecil, and John A. Cecil; each tract valued at $350.  Leovina and Daisy Cecil to $350 a peace; the remainder equally divided among my eight children.       S. A. CECIL.

At the time the will was made the testator was the owner of about 200 acres of land in Davidson County, on which he lived, and also a lot in

High Point on Main Street with a two-story brick dwelling on it, and about $1,200 of personal property, and he acquired after the date of the will a 7-acre tract. All the children were living at the date of the will and are still living except Daisy, who has died since her father, leaving as heir at law one of the plaintiffs. The widow died after the testator.

The defendants Alpheus, Barna, and John A. claim to own all the realty, including the town lot and the after-acquired 7-acre tract, except only the 40 acres each given in the will to C. A. and Yancey Cecil. This action is brought by the three children of the first marriage and the two daughters of the second marriage, claiming that each of the plaintiffs and defendants are tenants in common and owners of one-eighth interest of the realty, after allotting to each of the three defendants in the home "land" "each (a) tract valued at $350," which the judge finds was in fact allotted to each of defendants during testator's life, two of whom built thereon and the other has occupied the residence and 40 acres attached thereto.

The court held with the plaintiffs and adjudged that the lot in High Point and the 7-acre tract did not pass to John A. Cecil, Barna Cecil, and A. D. Cecil, but belonged in the "remainder equally to be divided," and the defendants appealed.

*Raper & Raper, Phillips & Bower, Robertson, Barnhardt & Smith for plaintiffs.*

*L. B. Williams and William P. Bynum for defendants.*

CLARK, C. J. The main allegations of the complaint are admitted in the answer, and the only controverted facts arising upon the pleadings are the number of acres in the tract of land owned by the testator, and the value of the said tract and of the lots in High Point and the value of the personal property. These are not issues of fact, but incidental questions of fact, properly found by the judge in construing the will, which is a matter of law for the court.

It was alleged in the complaint and admitted in the answer that prior to the date of the will the testator had marked off to Y. F. Cecil and C. A. Cecil each about 40 acres of the home place, and that each was living on the same at the time, and that he had previously given Julia A. York the sum of $50 at her marriage. The entire evidence shows that the home tract contained a little over 200 acres, and the valuation, taking the evidence of both sides, was about $1,750, being a tract of about $350 to each of the five sons. The personalty was about enough to give each of the daughters $350.

It appears from the four corners of the will that the ruling intention thereof was equality of division among the eight children. The testa-

tor had given 40 acres of land to each of the two sons by the first mar-
riage and was giving the remainder of the home tract to the three sons
by the second marriage (to whom, it is in evidence and is found by the
judge, 40 acres each was marked off in the testator's lifetime and was
occupied by each of them in severalty; two of whom have con-
veyed by metes and bounds, and the other has mortgaged his allotted
tract since his death). This would give them slightly over 40 acres
each, valued by him at $350. He had given Julia $50, and he adds in
the will $300 in money, making her share $350. In the will he gives to
the other two daughters $350 each, out of the personalty, which to-
gether with the $300 to Julia about absorbed the personalty. He gave
to his wife "all my lands, and horses, cattle, hogs (and money after my
few debts are paid) as long as she remains my widow after her death,
the land to be divided between Alpheus Cecil, Barna Cecil, and John
A. Cecil, each tract valued at $350."

The whole controversy turns on the construction of the sentence in
the will just quoted. We think the court properly held that the word
"land" referred to the home tract, which he directed to be "divided
between Alpheus, Barna, and John A. Cecil, each tract valued at $350,"
which would absorb that tract. This would be plain if he had inserted
"a" so as to read "each a tract valued at $350," and we think that the
word "Land," with a capital L, meant the home or farm tract. He
gave to his wife "all my lands," but when he speaks of the division
among the three defendants he used the word "Land" in the singular,
and with a capital letter, showing that he referred to the home tract.
He evidently omitted the "a," just as in the next line he omitted the
word "have" before "$350 a peace" to his two daughters by the second
wife. After making the above division of a $350 tract of land to each
of his five sons and $350 in money to each of his three daughters, the
intent of the will is made plain by the concluding sentence: "The re-
mainder equally to be divided among my eight children." There
would have been no remainder if the three defendants were to have the
real estate in High Point and the seven acres subsequently acqired.

Upon the evidence the judge finds that the farm of 200 acres or more

|  |  |
|---|---|
| was worth about............................. | $1,750 |
| Lot in High Point, $1,000 to.................. | 4,500 |
| Personal property $1,000 to.................. | 1,250 |
| Total $3,750 to........................... | $7,500 |

If the contention of the three defendants was right, they would get
out of this $2,050 to $5,550, besides the 7-acre tract, while the other

five children, two of whom were also children of the last marriage, would get $350 each. This is contrary to the evident intention of the will, which is equality. Neither do we think it a fair construction that the word "land," which was to be divided between the three sons, who are defendants, was intended to embrace the valuable lot in the city, and that he would describe it as "each tract valued at $350." Lots in town are not called "tracts," and the context shows that the intention was to give, as the will expressed it, "to each of the three sons (a) tract valued at $350."

The defendants except to the judge's findings of fact, but all the findings are as to "questions of fact" in regard to the value of the different tracts and incidental matters throwing light upon the intent of the testator and the construction of the will. The findings as to valuation are not conclusive in the division of the undevised property, which will probably be made by a sale and division of the proceeds. The other facts found are mostly matters alleged in the complaint and admitted in the answer. On the trial the defendants themselves objected to the submission of issues to a jury. The extraneous evidence was properly "admitted for placing the court at testator's point of view when he made the will and thereby aiding in the right interpretation of the will." *Wooten v. Hobbs,* 170 N. C., 214.

We conclude that the true intent of the will that Alpheus, Barna, and John A. Cecil, the defendants, were devised "each (a) tract of land valued at $350," being the balance of the home "land" not already marked off by the testator to the other two sons, and that after taking out the $300 in money devised to Julia and the $350 each to Leovina and Daisy, all the "remainder is to be equally divided among the eight children." Any other construction would be contrary to the palpable intent of the will, and would destroy the possibility of any "remainder," which the testator directed to be divided.

The decision below is
Affirmed.