WACHOVIA BANK & TRUST COMPANY, WILLIAM N. REYNOLDS, JOHN C. WHITAKER, AND L. D. LONG, EXECUTORS AND TRUSTEES UNDER THE WILL OF MRS. KATE G. BITTING REYNOLDS, DECEASED, v. THE PLUM-TREE SCHOOL FOR BOYS, INCORPORATED, AND BOARD OF EDUCATION OF AVERY COUNTY.

(Filed 4 February, 1949.)

**1. Corporations § 17b—**

　　While a corporation which has been effectively dissolved cannot sue or defend as such, the suspension of its charter for failure to pay franchise tax does not deprive it of its capacity to defend its rights when sued.

**2. Same: Wills § 34a—**

　　Appellant contended that appellee had lost its corporate existence and therefore had no capacity to plead in the action or take as beneficiary under

TRUST CO. *v.* SCHOOL FOR BOYS.

the will, and introduced its charter and certificate of the Secretary of State containing cancellation or restriction of its charter for nonpayment of franchise tax. Defendant appellee introduced certificate of the Secretary of State stating that the cancellation was done through error and purporting to correct the error. *Held:* The trial court was justified in rejecting appellant's contention.

**3. Corporations § 41: Wills § 34a—**

The evidence tended to show that an incorporated boys' school was a part of an institute which also operated a girls' college some few miles distant, that upon destruction of the school by fire the remainder of its property and its student body were removed to the site of the girls' school, but that it maintained the same activities as far as possible, and that the trustees of the boys' school continued to be elected separately. *Held:* The evidence is sufficient to support the court's finding that the school had kept its entity and had not lost its right to sue or to take property because of asserted merger with the girls' college.

**4. Corporations § 41—**

A corporate merger can be accomplished only by appropriate legal procedure, and results in the loss of the separate entity of the merged corporation unless saved by the terms of the merger; while in an amalgamation of two organizations engaged in similar activities, the associated organization does not *ipso facto* cease to exist or necessarily lose its corporate entity.

**5. Appeal and Error § 40d—**

Ordinarily the appellate court is bound by the findings of fact of the trial court when they are supported by any competent evidence, even though there be evidence *contra.*

**6. Wills § 39—**

The rule that the appellate court is bound by findings of fact when supported by evidence is applicable to findings based on evidence of extrinsic facts or circumstances admitted to clarify the intent or identity of the beneficiaries in an action to construe a will.

**7. Wills § 34b—**

The will in question bequeathed a certain sum "to Plumtree School at Plumtree, N. C." There was evidence that testatrix was interested in an incorporated denominational school which had been operated under this name in the town designated, but that prior to the execution of the will it had been amalgamated with another institution at another locality when its buildings burned. There was also evidence that the words "at Plumtree, N. C." were inserted after the first drafts approved by testatrix. *Held:* The evidence is sufficient to support a finding that the school was the intended beneficiary.

PLAINTIFF Trustees and defendant Board of Education of Avery County appeal from *Edmundson, Special Judge,* 14 June, 1948, Civil Term, FOYSYTH Superior Court.

This action presents a controversy over a provision in the will of Mrs. Kate G. Bitting Reynolds making a bequest of $10,000 to the "Plumtree School at Plumtree, N. C." The action is brought by the Bank as executor and trustee under the will, against the Plumtree School for Boys, Inc., and the Board of Education of Avery County, in order that it may be judicially determined to which of the contending claimants, if either, the gift may now be paid, or whether it must be regarded as a lapsed legacy, and go under the residuary provision of the will which makes specific provision for lapsed legacies.

On its face the will appears to have been executed 26 July, 1934; and Mrs. Reynolds died 13 September, 1946. The will is very lengthy, disposes of a vast amount of property and many thousands of dollars to various persons, institutions and charities; but we are concerned only with the provision found in Section 3, Item 5, as follows:

"To Plumtree School at Plumtree, North Carolina, the sum of Ten thousand Dollars ($10,000)."

There is a separate donation of $10,000 to Lees McRae College which one of the defendants thinks might have a bearing on the question of intent, since the evidence tends to involve the management of the Plumtree School for Boys with that institution.

As between the codefendants there is the question as to which contender may best qualify as the object of the testator's bounty under the description given in the will; and, if the bequest is good at all, the case hinges on this identity.

Evidence pertinent to that issue may be summarized as follows:

Rev. Edgar Tufts, a Presbyterian minister, came to Banner Elk in 1897, and operated a boarding school for girls and a day school for boys. In 1903, and following for a period, the boys' department of this school was carried on at Plumtree, a little village on the Toe River about 20 miles away, and was there for some time operated under the supervision of Rev. Joe Hall, a brother-in-law of Mr. Tufts, in a building near the post office.

In 1924 this school was incorporated under the laws of North Carolina under the name "The Plumtree School for Boys, Inc.," to carry on charitable and religious work of the Presbyterian Church of the United States in the education of boys in Avery County and other points, if deemed necessary, and especially for maintaining and conducting a school or schools at or near Plumtree in Avery County for the education and instruction of boys under the supervision of Holston Presbytery.

Mrs. Kate Bitting Reynolds, a devout member of the Presbyterian Church, as well as her husband, W. N. Reynolds, were personally interested in the Rev. Edgar Tufts and the work he was doing in the various organizations and institutions which were being established by him and

through his influence and sponsored by the Presbyterian Church in the education of the youth in that section. Mrs. Reynolds was greatly interested in the work of the Presbyterian Church on behalf of boys and girls in western North Carolina, and had made many contributions to institutions organized under the influence of Mr. Tufts; and very many institutions in central and western North Carolina, the great majority of which were under the sponsorship of the Presbyterian Church. She had made contributions during her lifetime to the Plumtree School for Boys organized by Mr. Tufts.

There was evidence on the part of the defendant, the Plumtree School for Boys, tending to show that the Plumtree School had been, as stated, a part of Lees McRae Institute, now Lees McRae College, the girls' department being conducted at Banner Elk and the boys' department at Plumtree. There is further evidence to the effect that after its incorporation in 1924 the school was continuously operated at Plumtree until the dormitory building was destroyed by fire in 1927, after which time the student body of the school and the property which had survived the fire were transferred to Banner Elk, and the school was thereafter conducted as a department of Lees McRae College; having, however, separate trustees which were regularly elected by the Presbytery in whose jurisdiction the college and the school were located, and that its organization had been kept intact.

The evidence on the part of this defendant also tended to show that there never had been any school at Plumtree or in its vicinity, or indeed in Avery County, that was ever known as Plumtree School except the institution thus incorporated and carried on in that place until removed to Banner Elk.

There is evidence, however, on the part of the defendant Board of Education that a public school, a part of the State education system, had been conducted in the vicinity of Plumtree and had been sometimes known as the Plumtree School. For a considerable period of time the school was conducted within three-quarters mile of Plumtree and was later moved down the river at a site some two miles away, but it had meanwhile served the children of Plumtree and the district in which it was located was known as the Plumtree District. The evidence of the School for Boys tended to show this school was known as the Riverside School, and a conveyance made by the Board of Education was offered in which it was so designated.

There was further evidence on the part of this defendant, Board of Education, that the charter of the Plumtree School for Boys, Inc., had been suspended in 1938 on notification by the Commissioner of Revenue to the Secretary of State, for failure to make report and pay franchise tax. And further, that the corporation had transferred its property to Lees McRae College.

The Boys School was permitted, over its codefendant's objection, to introduce a certificate of the Secretary of State that the suspension or cancellation of the charter had been erroneously made, or made through mistake, and purportedly corrected.

There is much evidence as to the charities and philanthropies of Mrs. Reynolds. She was described as broad in her sympathies and generous in her contributions wherever she found the need for help; but the evidence of plaintiff tended to show that in these she leaned toward Presbyterian sponsored institutions and efforts.

The Board of Education brought out in the evidence that there were several institutions or organizations, legatees under Section three of the will containing the disputed bequest, which are not directly under the Presbyterian influence or sponsorship; and its codefendant, The Boys School, pointed out that most of these charities were motivated by peculiar personal reasons, and that they formed no real exception to the rule.

Chronologically, it appears that at the time the will was executed the School for Boys had already been transferred from Plumtree to Banner Elk, some twenty miles away. As to the phrase "at Plumtree, North Carolina," used in the designation of the school, the Board of Education contends that it excludes the claim of its codefendant. The latter contends that it is only a part of the description and explainable.

L. D. Long, witness for the defendant School for Boys, testified in substance that he was secretary to Mrs. Reynolds and made many notes and memoranda at her dictation respecting her intended will,—the beneficiaries and sums to be given them, as she intended to put them in the will. That he made several successive notes of this item to the Plumtree Boys School and testified that the words "at Plumtree, N. C.," were not in the memoranda as given him; but that when the draft had been taken to the Safe Deposit & Trust Company in Baltimore they wrote him to supply omitted addresses, and he added the location in his own handwriting. First having left a blank in the typewriting, he added it in pencil. It was then carried forward in successive drafts and so appears in the will as executed.

At the conclusion of the evidence the counsel for the Board of Education moved the court to strike out all pleadings filed by the Plumtree School for Boys, Inc., contending that the charter of the corporation had been canceled, and that the alleged corporation had no right to file any pleading, make any appearance, or claim the legacy in question. The motion was overruled.

The court made its findings of fact and conclusions thereupon, holding that the legacy was valid and subsisting; that the testator intended the Plumtree School for Boys, Inc., as the legatee and that it had the capacity to take under the will.

Judgment was entered accordingly "that the defendant The Plumtree School for Boys, Inc., recover from the plaintiff without interest the $10,000 bequest covered by Item 5 of Section 3 of the last will and testament of Mrs. Kate G. Bitting Reynolds." The defendant Board of Education objected and excepted "to each and every of the findings of fact," and to the judgment entered, and appealed. The plaintiff also appealed, but filed no brief.

*R. W. Wall and Proctor & Dameron for defendant Board of Education, appellant.*

*Ratcliff, Vaughn, Hudson & Ferrell for defendant Plumtree School for Boys, Inc., appellee.*

SEAWELL, J. Hereinafter it will be convenient to refer to the appellant as the Board of Education, and the appellee as the Boys School.

The appeal of the defendant Board suggests some legal hurdles in the way of recovery by its codefendant, the Boys School, which, if insurmountable, might bring about a lapse in the legacy with no resultant benefit to itself.

The appellant contends that in three ways at least, either of them efficient, the Boys School has lost its corporate entity or capacity to plead in this action or take under the will: Through the act of the Secretary of State in suspending its corporate rights and powers in failing to report and pay franchise tax; through the transfer of its property; and through its merger with Lees McRae College.

It is true, of course, that a corporation which has been effectually dissolved cannot sue or defend as such,—it is simply *civiliter mortuus.* A corporation which has been declared inoperative for failure to file its annual reports or suspension by the Secretary of State for failure to pay its franchise tax has not necessarily suffered extinction, 19 C. J. S., p. 1564, sec. 1774; *State v. Superior Court of Snohomish County,* 237 P. 722, 135 Wash. 315. And in *Pinchback v. Mining Co.,* 137 N. C. 171, 49 S. E. 106, we find that the corporation, even when it is in the hands of the receiver and its property sold, is not dead. "It seems that the defendant corporation had gone into the hands of a receiver and its property sold. This, of course, does not affect the existence of the corporation." In *State v. Superior Court of Snohomish County, supra,* where the statute in aid of tax collection is comparable with ours, the court does not regard the corporation as having lost all entity or capacity, but merely as dormant and, as suggested in the text above, still having the capacity at least to defend its rights when sued in the court. The statute provides no other method by which the assets and properties of the corporation can be protected and we do not believe it was the intention of the law to

leave the corporation defenseless against assault and sequestration from any and all quarters.

Moreover, if this attack upon the corporate capacity of the defendant Boys School was timely, which we doubt, the School, having put in evidence its charter, thereby established, *prima facie*, its corporate existence. Defendant Board introduced the certificate of the Secretary of State containing the cancellation or restriction of the charter powers and afterward the defendant Boys School introduced a certificate to the effect that the cancellation was done through error and purported to correct the error. We do not know upon what principle this could be excluded.

This later certificate of the Secretary of State was not based on the procedure of revival of the corporation or restoration of its powers after lawful suspension as laid down in the statute (P. L. 1937, Chapter 127), but was, as suggested, in the form of the correction of an erroneous action in declaring and recording the suspension. How the error came about is collateral to our present inquiry and not important; but it is worthy of note that Section 213 of the cited statute, among other excepted organizations, exempted "educational corporations not operated for profit" from the duty of filing returns or paying franchise tax, by excluding application of sections so requiring. As the record now stands, the trial court was justified in rejecting the view contended for by counsel for the Board.

The appealing Board contends that the evidence discloses that the Boys School had conveyed all of its assets and thereby rendered itself unable to carry on the purposes for which it was organized (G.S. 55-129), and that the judge should have so found. The appellant Board made no request for a finding of fact to fix the status of the corporation on this point, and under the evidence it would be difficult to reach the conclusion that the defendant appellee, an educational institution and not a business enterprise, had so disposed of its assets and properties as to render it unable to conduct the business for which it was organized. The evidence does disclose that after the so-called merger the Boys School still received income from securities which went to Lees McRae College for instruction similar to that which the students of that school originally received at Plumtree.

As for the merger with Lees McRae College, the evidence seems fairly susceptible to the view that the Boys School had been kept distinct as a corporate entity, although operated within the College, and that its trustees had been regularly elected by the Presbytery.

For these reasons we are of the opinion that the capacity of the Boys School to take under the will was not subject to this particular attack, if, indeed, the actual preservation of the corporate capacity of the group or organization should be considered a necessary qualification.

There is a marked distinction between amalgamation with another society, or organization, engaged in similar activities, although the latter may be the controlling associate, and a corporate merger or consolidation. In the former instance the associated organization does not *ipso facto* cease, or necessarily lose its civil rights; it is often easy for the organization to demonstrably maintain its identity and continuity of existence. In a corporate merger, which is accomplished only by appropriate legal procedure, the individuality and life of the association is liable, and likely, to be lost, unless saved by the terms of the merger. There is no evidence here of a corporate merger. There is evidence that the Boys School was joined with Lees McRae College and managed or carried on by that institution, providing instruction in all respects similar to that theretofore required by its charter, and maintaining its organization without break in the significant election of trustees or directors by the Presbytery. In that situation authority for favorable consideration of the legal capacity of the appellee to take under the will may be found in numerous authorities from which we cite, as in accord with the principle we are persuaded to apply; *Old Colony Trust Co. v. Third Universalist Society,* 285 Mass. 146, 188 N. E. 711, 91 A. L. R. 837; *Jordan's Estate,* 310 Pa. 401, 165 A. 652; *Boston Safe Deposit & Trust Co. v. Stratton,* 259 Mass. 465, 156 N. E. 885.

Ordinarily in this jurisdiction the appellate court is bound by the findings of fact made by the trial court where there is evidence to support them notwithstanding the fact that it may be contradictory. *Exterminating Co. v. Wilson,* 227 N. C. 96, 40 S. E. (2) 696; *Bell v. Lumber Co.,* 227 N. C. 173, 41 S. E. (2) 281; *S. v. Hart,* 226 N. C. 200, 37 S. E. (2) 487. That is true in the construction of wills where it is necessary to resort to extrinsic facts or circumstances to clarify the intent or identify the object of the bounty. The rule is correctly stated in 57 Am. Jur., Wills, sec. 1028: "While the findings of the trial court in a will construction case are open to review in an appellate court, they are, when based on extrinsic facts in addition to the will itself, to be given the same weight as they are in any other case."

Moreover, the stipulation provided that the trial judge should hear the controversy without a jury and the weight of the evidence and the inferences to be drawn from it must be considered in that light.

The defendant Board of Education has excepted to all the findings of fact and conclusions of law made by the trial court. We do not find it necessary to go into a detailed discussion of these exceptions or to institute a point by point comparison of the findings with the supporting evidence. It is sufficient to say that a diligent examination fails to discover any instance in which an essential finding of fact is not substantially supported by evidence, although at points the evidence may be variant or contradictory.

As we have already stated, there are two primary questions involved in the controversy: First, whether the legacy lapsed by the inability of the intended donee to take at the death of the testator; and second, the identity of the intended legatee. Upon these findings we are of the opinion that the trial court correctly held that the legacy did not lapse and that it was the intention of the donor to bestow it upon the Plumtree School for Boys, Inc., one of the contending defendants in this case.

The judgment of the trial court is, therefore,

Affirmed.