WACHOVIA BANK AND TRUST COMPANY as EXECUTOR UNDER THE WILL
OF ADDIE HEREFORD UPTON, v. CAMILLE H. WOLFE, AND THE
AMERICAN NATIONAL RED CROSS.

(Filed 3 February, 1956.)

**1. Wills §§ 31, 39—**

The objective of construction is to ascertain the intent of testator as expressed in the will, and to this end the conditions and circumstances surrounding testator at the time he executed the instrument, including the relationship between testator and the beneficiaries named therein, and the condition, nature and extent of testator's property, are competent to be considered, the extrinsic evidence being admissible to aid the court in ascertaining the intent of the testator as expressed in the will, and not to supply, contradict, enlarge or vary the words of the instrument.

**2. Wills § 34e—**

Ordinarily, the word "estate," unless restricted by the context, embraces a testator's entire property, real and personal, although in its technical sense it may refer only to the degree, quantity, nature and extent of a person's interest in land.

**3. Same—**

The word "property" and the words "personal property" have varied meanings according to the context and circumstances.

**4. Wills § 39—**

Testatrix bequeathed to her sister "my furniture, household effects and personal property. The balance of my estate I leave to" the American National Red Cross. *Held:* The words "personal property" present a

patent ambiguity as to the intent of testatrix, and extrinsic evidence as to the circumstances surrounding testatrix at the time of executing the instrument should have been considered by the court in determining the question.

### 5. Same: Appeal and Error § 1—

Where the lower court erroneously excludes extrinsic evidence bearing upon the intent of testatrix, the cause will be remanded, and the Supreme Court will not consider the excluded evidence, even though it appear of record, nor attempt to decide what portions of the excluded evidence would be competent upon the question, since the Supreme Court possesses no original jurisdiction in such matters, but has jurisdiction only to review the rulings of the lower court in respect thereto.

### 6. Appeal and Error § 40b: Pleadings § 22—

When it appears that the lower court denied motion for leave to amend a pleading under a misapprehension of the pertinent law, the ruling will be set aside with leave to appellant to renew the motion, if so advised.

### 7. Wills § 39—

Extrinsic evidence is competent to explain a latent defect in a will to identify a described property or beneficiary. In such case the court construes the will, but the jury, under appropriate instructions, passes upon the issue or issues of fact.

### 8. Same—

When a will contains a patent ambiguity, extrinsic evidence is not admissible to explain the meaning of the words used, and it is the duty of the court to declare the testator's intent as expressed in the instrument in accordance with established rules of construction, but when the patent ambiguity relates to intent, extrinsic evidence as to the facts and circumstances surrounding testator at the time he executed the instrument is competent to aid the court in ascertaining the intent of testator from the language of the instrument. In such case it is for the court to find the facts in regard to the circumstances attendant, although in its discretion it may submit such questions of fact to the jury.

APPEAL by defendant Wolfe from *Armstrong, J.,* September, 1955, Term, of ROWAN.

Action for declaratory judgment brought by executor for construction of the will of Addie Hereford Upton.

Testatrix, a resident of Rowan County, died 5 August, 1953. Her holographic will, executed 2 October, 1951, was probated 18 August, 1953.

The dispositive provisions of the will are these:

"I hereby will and bequeath ten thousand dollars (10,000.) to the Charity Hospital in New Orleans, Lousiana. To St. Andrews Episcopal Church in New Orleans, Louisiana, I will the sum of five hundred (500.00) dollars. To St. Luks (*sic*) Episcopal Church in Salisbury, N. Carolina, I leave the sum of (500.00) five hundred dollars. To the

Red Cross of Salisbury, N. Carolina, I leave five hundred (500.00) dollars. To my sister Mrs. Camille H. Wolfe, I leave my furniture, household effects and personal property. The balance of my estate I leave to the National Red Cross society of America."

The pleadings establish these facts: The value of the gross estate was $33,356.55, consisting of (1) cash on hand, $221.65, (2) bank and building and loan balances, $3,193.90, (3) stocks and bonds, of the value of $29,641.00, and (4) household furniture and personal effects, of the value of $300.00. After payment of the four specific bequests aggregating $11,500.00, the ascertained liabilities, and exclusive of furniture and household and personal effects, the present value of the residuary estate, is as follows: (1) cash, $911.42, and (2) "bonds and securities," $20,915.78.

It was stipulated that "National Red Cross Society of America," referred to in the will, is the American National Red Cross, a charitable corporation organized under Act of Congress, defendant herein.

Each defendant claimed said residuary estate of the testatrix. The executor prayed the advice and instructions of the court, posing this specific question:

"Did the testatrix intend that the bequest of *all* of her 'personal property' to her sister, Camille H. Wolfe, include the aforementioned cash, bonds, and securities or did the testatrix intend that said cash, bonds and securities not be included in the term 'personal property' and should pass to the defendant, American National Red Cross, as her residuary estate?" (It is noted that the word, "all," is not used in the will in conjunction with the bequest to defendant Wolfe.)

The only allegations *of fact* in the pleadings in respect of the circumstances and relationships of the testatrix when she made the will are set forth below.

Defendant Wolfe alleged: "The testatrix was a widow and left no lineal descendants; this defendant is her only surviving sister or brother and nearest of living kin. The testatrix and this defendant were lifelong companions and resided together for many years."

Defendant Red Cross alleged:

". . . the defendant Camille H. Wolfe is a sister of the testatrix and one of ten (10) sisters and brothers that the testatrix had; . . ." Also, ". . . the testatrix, who was a childless widow over 80 years of age, had resided all of her life in the State of Louisiana until she moved to the home of a niece, Mrs. F. M. Warlick, 105 Mitchell Avenue, Salisbury, North Carolina, in 1948, where she resided for several years until she began renting an apartment at the home of another niece, Mrs. J. O. Clamp, at 416 West Horah Street, Salisbury, North Carolina, permitting her sister, Mrs. Camille H. Wolfe, to reside with her until

her death on August 5, 1953. That the testatrix did not own any real property on October 2, 1951, the date of the execution of the will of testatrix, or at any time thereafter."

At pre-trial hearing, both defendants moved that they be permitted to offer evidence to aid in the construction of the will. Defendant Wolfe moved further for a trial by jury on eleven specific issues tendered by her. Defendant Red Cross opposed this motion for a jury trial.

The court denied defendant Wolfe's motion for a jury trial, refusing to submit the issues tendered by her. In addition, the court ruled that "extrinsic evidence" was inadmissible; but, noting that "it is to be understood that the Court does not consider this evidence in construing the will," allowed defendants, if they desired to do so, to "make a record" of such excluded "extrinsic evidence."

Defendant Wolfe then offered evidence as appears in the record. Defendant Red Cross offered no evidence. Its counsel cross-examined the witnesses of defendant Wolfe. This was done "for the record."

After offering this evidence, defendant Wolfe moved for leave to amend her answer, "by adding to the allegations of extrinsic circumstances already contained in said Answer, further specific averments covering the evidence presented." The court denied the motion.

The court's construction was that the testatrix "did not intend the words 'personal property' in her legacy to the said Camille H. Wolfe to include stocks, bonds, securities and cash and did intend that said properties should pass to the defendant the American National Red Cross."

Accordingly, judgment was entered in favor of defendant Red Cross. Defendant Wolfe excepted and appealed. Her assignments of error are that the court erred: (1) "in refusing to receive and consider extrinsic evidence in the construction of the will"; (2) "in refusing to allow Jury trial"; (3) "in refusing to submit issues tendered" by her; (4) in denying her motion for leave to amend her answer; and (5) in construing the will and in entering judgment in favor of the defendant Red Cross.

*Craige & Craige, Clarence Kluttz, and Lewis P. Hamlin, Jr., for defendant Wolfe, appellant.*

*Woodson & Woodson for defendant American National Red Cross, appellee.*

BOBBITT, J. Did the testatrix use the words "personal property" to denote everything she owned except real property? Defendant Wolfe says, "Yes." Defendant Red Cross says, "No," contending that when

used in the clause, "I leave my furniture, household effects and personal property," the "personal property" in mind was *ejusdem generis,* that is, tangible articles of household and personal use.

The court, based solely on the will itself and the admissions, construed the will and entered judgment in favor of defendant Red Cross.

The controversy concerns the assets, noted above, now in the hands of the executor. Admittedly, one of the defendants is entitled thereto. Each contends that there is no uncertainty as to the proper interpretation of the will, but the *plain meaning* thereof as asserted by each is exactly opposite to that asserted by the other. To resolve its dilemma, the executor invokes the advice and instructions of the court, an appropriate course when in such plight.

The situation is this: The assets of the estate and the beneficiaries thereof are identified. The testatrix was a widow, without lineal descendants, and defendant Wolfe is her sister. These facts, nothing else, are established by admissions in the pleadings or by stipulation.

For the reasons stated below, we refrain from construing the will upon the record now before us.

The authority and responsibility to interpret or construe a will rest solely on the court. Its objective is to ascertain the intent of the testator, as expressed in the will, when he made it. *Trust Co. v. Green,* 239 N.C. 612, 80 S.E. 2d 771; *Trust Co. v. Waddell,* 237 N.C. 342, 75 S.E. 2d 151.

*Barnhill, J.,* now *C. J.,* in *Trust Co. v. Waddell, supra,* says: "In ascertaining the intent of the testator, the will is to be considered in the light of the conditions and circumstances existing *at the time the will was made. Scales v. Barringer,* 192 N.C. 94, 133 S.E. 410; *Heyer v. Bulluck,* 210 N.C. 321, 186 S.E. 356; *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17; *In re Will of Johnson,* 233 N.C. 570, 65 S.E. 2d 12.

" '. . . the court should place itself as nearly as practicable in the position of the testator . . . at the time of the execution of the will.' *In re Will of Johnson, supra."*

*Clark, C. J.,* in *Patterson v. McCormick,* 181 N.C. 311, 107 S.E. 12, in a sentence frequently quoted, puts it this way: "The will must be construed, 'taking it by its four corners' and according to the intent of the testator as we conceive it to be upon the face thereof and according to the circumstances attendant."

Generally, "the circumstances attendant" when the will was made refers to the relationships between the testator and the beneficiaries named in the will, and the condition, nature and extent of his property. *Hubbard v. Wiggins,* 240 N.C. 197, 81 S.E. 2d 630; *Heyer v. Bulluck, supra; Herring v. Williams,* 153 N.C. 231, 69 S.E. 140; *Woods v. Woods,* 55 N.C. 420.

It is frequently said, as in *Heyer v. Bulluck, supra,* that "the attendant circumstances" are to be considered "where the language is ambiguous, or of doubtful meaning." In such case, the court undertakes "to put itself in the testator's armchair." In so doing, as well expressed by *Torrance, C. J.,* in *Thompson v. Betts,* 74 Conn. 579, 51 Atl. 566, 92 Am. St. Rep. 235: "In short, the court may, by evidence of extrinsic facts, other than direct evidence of the intention of the testator, put itself as near as may be 'in the condition of the testator in respect to his property and the situation of his family,' for the purpose of rightly understanding the meaning of the words of his will."

The admission of evidence of "the circumstances attendant" to enlighten the court in its task of ascertaining the intent of the testator, *as expressed in the will,* is quite different from the admission of extrinsic evidence to supply, contradict, enlarge or vary the words of the will.

We advert to the well established rule in relation to the admissibility of extrinsic evidence to explain a *latent* as distinguished from a *patent* ambiguity in a writing, be it deed or will. As to deeds, see *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E. 2d 889. As to wills, consideration of the opinion of *Pearson, J.,* later *C. J.,* in *Institute v. Norwood,* 45 N.C. 65, is appropriate.

As pointed out by *Pearson, J.,* later *C. J.:* A *patent* ambiguity presents *a question of construction;* and "the only purpose of construction is to find out *what the instrument means,* and that must depend upon *what the instrument says.*" A *latent* ambiguity presents *a question of identity*—"a fitting of the description to the person or thing, which can only be done by evidence outside or *dehors* the instrument; . . ." Reference is made to the illustrations given. Suffice it to say that, in illustrating what is meant by a *patent* ambiguity, the instances cited relate to bequests or devises held void because the description of property or of beneficiary was so vague that nothing appeared therein that could be identified by fitting extrinsic evidence to the words used in such description. Thus, where "&c" appeared in the will, this was held a *patent* ambiguity. *Taylor v. Maris,* 90 N.C. 619, 624.

*Merrimon, J.,* later *C. J.,* in *McDaniel v. King,* 90 N.C. 597, 602, says: "If a will is sufficiently distinct and plain in its meaning as to enable the court to say that a particular person is to take, and that a particular thing passes, that is sufficient; and it must be construed upon its face without resorting to extraneous methods of explanation to give it point. Any other rule would place it practically within the power of interested persons to *make* a testator's will, so as to meet the convenience and wishes of those who might claim to take under it." For additional citations, see *Reynolds v. Trust Co.,* 201 N.C. 267, 277-278, 159 S.E. 416.

Ordinarily, the word "estate," unless restricted by the context, embraces a testator's entire property, real and personal. *Harrell v. Hoskins,* 19 N.C. 479; *Hunter v. Husted,* 45 N.C. 141; *Foil v. Newsome,* 138 N.C. 115, 50 S.E. 597; 57 Am. Jur., Wills sec. 1337. Yet in its primary, technical sense it may refer only to the degree, quantity, nature and extent of a person's interest in land. *Bond v. Hilton,* 51 N.C. 180.

Our decisions fully justify the statement of *Rodman, J.,* in *Wilson v. Charlotte,* 74 N.C. 748, viz.: "The word 'property' is not such a technical one that if properly used it has everywhere the same precise and definite meaning. Its meaning varies according to the subject treated of and according to the context." This is equally true in respect of the words, "personal property." Annotations: "What passes under term 'personal property' in will." 137 A.L.R. 212; 162 A.L.R. 1134. "Every expression, to be correctly understood, ought to be considered with a view to the circumstances of its use." *Stacy, C. J.,* in *Heyer v. Bulluck, supra.*

The definition of "personal property" in G.S. 12-3 (6) embraces "choses in action and evidence of debt, including all things capable of ownership, not descendable to heir at law." This definition is expressly applicable to the construction of *statutes.* Even so, it is not applicable in that connection if "such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the context of the same statute."

In the will before us, there is no *latent* ambiguity. There is no question of identifying a beneficiary or a particular property by fitting the person or thing to the description. There is no suggestion that any provision of the will is void for vagueness of description either of beneficiary or of property.

The controversy turns on the sense in which the testatrix used the words "personal property." The ambiguity appears on the face of the will. The court must ascertain and declare the intent of the testatrix. The will, in its entirety, *and* the facts constituting "the circumstances attendant" when made, are to be considered. We hold, therefore, that the court was in error in refusing to consider evidence tending to show "the circumstances attendant." What bearing, if any, they will have in interpreting the sense in which the testatrix used the words, "personal property," is not presently before us. This must be determined, in the first instance, by the trial court.

Appellee contends that the "excluded evidence," when considered in the light most favorable to defendant Wolfe, supports the construction of the will made by the court. The court below did not consider such evidence. Nor do we consider it.

*Barnhill, J.*, now *C. J.*, in *Woodard v. Clark*, 234 N.C. 215, 66 S.E. 2d 888, in words apposite here, says:

"Why doesn't this Court perform this judicial function and be done with it? Simply because this Court possesses no original jurisdiction in such matters. Its duty is to review the decisions of the Superior Courts of the State. The court below must exercise its original jurisdiction. If the parties are not then satisfied with the judgment entered they may bring the cause back for review."

Nor is it appropriate for us to attempt to mark out what portions of the "excluded evidence" would be competent for consideration by the court below, should the same evidence be offered at the next hearing. *Grandy v. Walker*, 234 N.C. 734, 68 S.E. 2d 807.

It appears that the court's denial of defendant Wolfe's motion for leave to amend her answer so as to allege additional facts was made under the misapprehension of law that facts tending to show "the circumstances attendant" were not competent for consideration. Hence, this ruling is set aside and leave is granted defendant Wolfe to renew said motion, if so advised. *Morris v. Wilkins*, 241 N.C. 507, 85 S.E. 2d 892. Perhaps it is well to note the distinction between facts embraced with "the circumstances attendant" and contentions as to the construction of the will.

One further matter requires consideration. The court below ruled, and rightly so, that the question posed was for the court, without a jury. In the absence of stipulation, "the circumstances attendant" are to be established by findings of fact by the court.

As stated by *Clark, C. J.*, in *Cecil v. Cecil*, 173 N.C. 410, 92 S.E. 158, referring to a similar situation: "These are not issues of fact, but incidental questions of fact, properly found by the judge in construing the will, which is a matter of law for the court." Further on in the opinion, we find these words: "The extraneous evidence was properly 'admitted for placing the court at testator's point of view when he made the will and thereby aiding in the right interpretation of the will.' *Wooten v. Hobbs*, 170 N.C. 214."

Incidentally, the trial judge, in his discretion, *may* submit questions of fact to a jury for determination. *In re Housing Authority*, 235 N.C. 463, 70 S.E. 2d 500; G.S. 1-172.

Appellant relies upon *Trust Co. v. School for Boys*, 229 N.C. 738, 51 S.E. 2d 477; *Trust Co. v. Board of National Missions*, 226 N.C. 546, 39 S.E. 2d 621; and *Raines v. Osborne*, 184 N.C. 603, 114 S.E. 846.

In *Trust Co. v. School for Boys, supra*, the controversy was over a provision in a will making a bequest of $10,000.00 to the "Plumtree School at Plumtree, N. C." A private school, Plumtree School for Boys, Inc., and the Board of Education of Avery County, each of which

operated a school at Plumtree, N. C., were the rival claimants. Extrinsic evidence was admitted to determine which of these two was the object of the bounty of the testatrix. Jury trial was waived. Upon the court's findings of fact, it was held that the testatrix meant the Plumtree School for Boys, Inc. The facts here fit the rule, stated above, under which extrinsic evidence is admissible to fit the person, the beneficiary, to the description, that is, to explain a latent ambiguity.

In *Trust Co. v. Board of National Missions, supra,* issues were submitted to and answered by a jury. The controversy turned upon whether the "Asheville Normal and Associated Schools, of Asheville, N. C.," had ceased to exist as a public educational institution, so that a bequest to it passed over to a named contingent beneficiary. The main controversy, and the evidence bearing thereon, concerned what transpired subsequent to the death of the testator. True, as appears in the record, the first five issues answered by the jury identified four named schools as comprising the Asheville Normal and Associated Schools, of Asheville, N. C., owned and operated by a named church board, at the time the testator executed his will and when he died. This falls in the category of identification, that is, fitting the beneficiary to the description in the will.

Examination of the original record and briefs discloses that *Raines v. Osborne, supra,* was tried by Bryson, J., at September (Fall) Term, 1922, of Polk Superior Court. The action was brought by six plaintiffs. Each contended that he (or she) was entitled to a bequest made by the testatrix "to any household servant or any other household employee." Evidence was offered to identify each plaintiff as a beneficiary by showing the character of the services each performed. Judgment of nonsuit was entered as to five plaintiffs, the court ruling that the evidence was insufficient to bring any of them within the intent of the testatrix. Their appeal, brought forward separately, was considered in *Raines v. Osborne,* 184 N.C. 599, 114 S.E. 849, where the judgment of nonsuit was affirmed. The motion for judgment of nonsuit was overruled as to the plaintiff H. E. Constant. The jury, under a charge free from error, answered the issue in his favor. The defendant's appeal from the judgment in favor of this plaintiff, brought forward separately, was considered in *Raines v. Osborne,* 184 N.C. 603, 114 S.E. 846, where the decision was, "no error." (The reference to "appeal by defendant from Lane, J.," is erroneous.)

In *Raines v. Osborne, supra,* we have a case of the admission of extrinsic evidence to identify a beneficiary as a member of a class described in the will. Attention is called to what is said by *Walker, J.,* in opinion on plaintiff's appeal, to the effect that testimony as to declarations of a testator as to his intentions is incompetent.

Generally, these conclusions emerge from the decided cases:

1. In case of a latent defect, extrinsic evidence is admissible to identify a described property or beneficiary. This occurs when the description, while definite in some respects, has meaning only when specific property or a specific beneficiary is identified (fitted to the description) by evidence *dehors* the will. In such case, the court construes the will; but the jury, under appropriate instructions, passes upon the issue(s) of fact.

2. A patent ambiguity occurs when the description of property or persons is so vague that nothing appears therein that can be identified (fitted to the description) by evidence *dehors* the will. In such case the devise or bequest is void. Too, a patent ambiguity occurs when doubt arises from conflicting provisions or provisions alleged to be repugnant. *Field v. Eaton,* 16 N.C. 283; *Richardson v. Cheek,* 212 N.C. 510, 193 S.E. 705.

In short, when the doubt arises otherwise than from a latent ambiguity, it is for the court to declare the testator's intent as expressed in the will, in accordance with established rules of construction. In such case, extrinsic evidence, as understood in relation to a latent ambiguity, that is, to explain the testator's intention, is incompetent.

These conclusions would seem to be in accord with the weight of authority in other jurisdictions. Annotation: "Admissibility of extrinsic evidence to aid interpretation of will." 94 A.L.R. 26, and supplemental decisions.

However, in resolving doubt, other than in relation to a latent ambiguity, as to the testator's intention, the court, as indicated above, does take into consideration "the circumstances attendant" when the will was made, that is, facts such as indicated above; and, in the absence of stipulation, the court makes its findings, upon the evidence offered, as to any "incidental questions of fact" relating to such circumstances.

The judgment is vacated and the cause remanded for further hearing, at which the court will construe the will according to its terms and in the light of "the circumstances attendant" when made.

Error and remanded.