COMMERCIAL NATIONAL BANK OF CHARLOTTE, AS EXECUTOR AND TRUSTEE, v. LILLIAN F. ALEXANDER ET AL.

(Filed 3 December, 1924.)

1. **Courts—Jurisdiction—Equity—Trusts.**

   Our courts, in the exercise of their equitable power, have supervisory jurisdiction in the administration of trust estates, and the trustee, in cases of doubt arising in the course of his administration of the trusts imposed by the instrument, may resort to them for instruction.

2. **Same—Widow's Dissent — Contracts — Trusts—Contingent Interest— Minors—Parties—Judgments—Appeal and Error.**

   Where a will provides for an income to the widow, and, among other things, for contingent interests to ulterior takers, minors, some of whom are not *in esse,* appointing a trustee with power to carry out the provisions of the will, and all those who are to take upon contingency are not only represented by the trustee, but by class representation, and a guardian has been appointed and is acting for all minor interests, both *in esse* and otherwise: *Held,* the courts have jurisdiction to pass upon the question as to whether a contract made between the widow and another principal beneficiary, making her an increased allowance in consideration that she will not dissent from the will, will be in the best interest of all parties; and its action confirming the contract and preserving the *corpus* of the estate for the administration of the trust imposed will not be disturbed on appeal.

APPEAL by the guardian *ad litem* of infant defendants from *Shaw, J.,* at October Term, 1924, of MECKLENBURG.

W. S. Alexander died leaving a last will and testament in which he appointed the Commercial National Bank of Charlotte as trustee and said bank and R. A. Dunn as executors of his estate. Dunn renounced his right to qualify. After the will was admitted to probate the bank, as executor and trustee, filed a petition in the Superior Court for the purpose of asking the court's advice and instructions as to the proper administration of the trust estate and the approval of a contract made between the petitioner, the widow, and the chief residuary legatee.

The provisions of the will pertinent to the controversy are the following:

"Item I. I give, devise, and bequeath unto the Commercial National Bank of Charlotte, North Carolina (hereinafter called trustee), as trustee upon the trusts and for the uses and purposes hereinafter set forth and expressed, all of my property and estate of whatsoever kind and wheresoever situate, with full power and authority to sell, convey, mortgage, exchange, control, manage, invest, reinvest, and deal with the same and every part thereof, and receive and collect the dividends, income, issues and profits thereunder, in as full and ample manner as I myself could do in my lifetime, for the use and benefit of my legatees and beneficiaries hereinafter named.

"Item II. It is my will and desire that said trustee shall renew, extend, and pay off all of my indebtedness, according to the best judgment and discretion of said trustee, dealing with the same in such manner as will best protect my estate and avoid the sacrifice of my property.

"Item III. Out of the dividends, income and profits of my estate, I direct my said trustee to pay over to my beloved wife, Lillian F. Alexander, for and during the term of her life, an annual income of six thousand dollars ($6,000), the same to be paid to her in monthly installments of five hundred dollars ($500)."

Items four and five provide for the payment of annuities to Minnie R. Alexander and Ernestine B. Alexander for the term of their natural lives, etc.

"Item VI. It is my will and desire that my trustee shall segregate from my property and estate and hold and keep separate and intact sufficient capital assets or corpus of my estate to provide for the payment of the incomes mentioned in items III, IV and V of this will.

"Item IX. I authorize and direct my trustee, after providing for and paying annually the incomes mentioned in items III, IV and V, to hold, invest, and reinvest, year by year, any surplus dividends, profits and income from my estate; upon the expiration of two years from

my death, I direct my said trustees to turn over and deliver to my son, Walter L. Alexander, ten per cent annually of the corpus of my estate, then in its hands over and above the portion thereof necessary to produce the incomes provided for in items III, IV and V. I also direct my trustee, upon the death of the respective beneficiaries under items III, IV and V, to pay over to my said son, from time to time, the assets and corpus which may be added or restored to my general estate under item VIII.

"Item XI. After the death of my said wife and my daughter and my son and his wife, I give, devise, and bequeath all 'of my property and estate, which shall then remain in the hands of my trustee, to my grandchildren, Ernestine L. Alexander and Preston B. Alexander, and any afterborn grandchildren, to be divided equally between them per capita, share and share alike; and if any of said grandchildren shall die leaving no issue, the share of such grandchild shall go to the survivor or survivors, and if all of my grandchildren shall die leaving no issue, then seventy-five per cent of said property and estate referred to in this item shall go to the children of my brothers, John B. Alexander and W. C. Alexander, and their issue, per capita, share and share alike, and the remaining twenty-five per cent shall go to Grandfather Orphanage at Banner Elk, North Carolina, to be held as a permanent fund for the education and maintenance of the inmates of the institution."

Soon after the probate of the will the testator's widow notified the petitioner that it was her purpose and intention to dissent from the will and demand her year's allowance and distributive share in the estate if her annuity was not increased from $6,000 to $16,000. It was thereupon agreed between the petitioner and Walter L. Alexander, the principal residuary legatee, that it would be to the best interest of said legatee and the infant contingent remaindermen that the agreement be made and that the annuity be raised to $16,000 in consideration of her renouncing her right to dissent; provided, the agreement should not be binding unless ratified and confirmed by a decree of court.

The petitioner requested the court to confirm this agreement and to give the petitioner instructions in reference to other important questions which had arisen, concerning which the petitioner was in doubt. All the material allegations of the petition were admitted.

At the hearing Shaw, J., made a full investigation and rendered judgment finding that all the material allegations of the complaint were true and that it would best subserve the interest of the widow and the contingent remaindermen to carry the contract into effect. The contract was confirmed and the petition was authorized and directed to carry it out and to proceed as pointed out in reference to the other matters

concerning which the advice of the court was sought. The guardian *ad litem* appealed, assigning for error the following grounds:

"1. That the court had no jurisdiction of the action.

"2. That said judgment is not binding upon the unborn contingent remaindermen.

"3. That the court had no power to ratify and confirm the contract between the widow and the petitioner, referred to as Exhibit 'B'; and

"4. That the court has no power to advise and instruct the petitioner of and concerning the specific matters upon which the petitioner asked the advice and instruction of the court, as set out in the petition."

*Cansler & Cansler for petitioner.*
*Tillett & Guthrie and W. S. O'B. Robinson, Jr., for W. L. Alexander and Wife.*
*McNinch, Whitlock & Dockery for guardian ad litem.*

ADAMS, J. The infant defendants through their guardian *ad litem* appealed from the judgment, assigning for error the matters to which their four exceptions relate. The first and fourth exceptions may be considered together.

1. Not only was the action properly constituted in the Superior Court, but the court in the exercise of its equitable powers had jurisdiction to advise and instruct the trustee as to its discharge of the duties imposed upon it by the trust. One of the most important subjects of equitable jurisdiction is that of trusts, for the interest of all parties can be protected only by a strict observance of the terms prescribed by the instrument creating the trust. It is for this reason and others that courts of equity in the exercise of their supervisory power permit trustees to come into these tribunals and ask for advice or assistance. Accordingly in *Freeman v. Cook,* 41 N. C., 373, *Nash, J.,* said: "The defendants, however, allege that they ought not to be made answerable, as they took the advice of counsel and acted on it. The answer states that they were not only advised they could not disturb the possession of Mr. Freeman, but the counsel doubted if the settlement was not void for the nonage of Mrs. Freeman, and that he was disposed to think it was void. It was very important to the defendants, not only to have good advice, but such as would sustain or remove the doubts thus expressed and protect them in their action. What course, then, ought they to have pursued? Their only safe course was to have procured the advice of a court of chancery, which they had a right to resort to. Willis on Trustees, 125; 2 Fon. Eq., 172, note c. The chancellor is the only safe and secure counsellor to trustees." And in *Alsbrook v. Reid,* 89 N. C., 151, *Ashe, J.,* approved the doctrine in this

language: "The former courts of equity entertained, and our Superior Courts still entertain application for advice and instructions from executors and other trustees, as to the discharge of trusts confided to them, and incidentally thereto, the construction and legal effect of the instrument by which they are created. But the courts of equity never exercise this advisory jurisdiction when the estate devised is a legal one, and the question as to construction is purely legal. The jurisdiction is incident to that over trusts." See, also, *Haywood v. Loan & Trust Co.,* 149 N. C., 208; *Feild v. Alexander,* 170 N. C., 303; *Fisher v. Fisher, ibid.,* 378.

The petition discloses circumstances tending to show uncertainty and doubt as to the way in which the trust should be executed, and the trustee properly applied in the words of *Nash, J.,* to its "only safe and secure counsellor."

2. The defendants excepted on the ground that the judgment is not binding upon the unborn contingent remaindermen. As we understand the record the contingent remaindermen are represented not only by the trustee, but by living members of their class, and under these circumstances the exception must be overruled. The question of law is discussed in the following cases and need not be repeated here. *Ex parte Dodd,* 62 N. C., 98; *Overman v. Tate,* 114 N. C., 571; *Springs v. Scott,* 132 N. C., 548; *McAfee v. Green,* 143 N. C., 411; *Lumber Co. v. Herrington,* 183 N. C., 85.

3. The third exception rests on the proposition that the court had no power to ratify and confirm the contract between the petitioner, as trustee, the widow, and Walter L. Alexander. The widow's right to dissent from the will and to enter into a contract with the residuary legatee is not denied, but involved in the proposed contract are the rights of the contingent remainderman. The paragraph in the judgment relating to the contract is as follows: "That it will not only be to the best interests of the beneficiaries under said will, but particularly the infant contingent remaindermen, for the petitioner to carry out the terms of the agreement heretofore entered into between it and the said Lillian F. Alexander, copy of which is attached to the petition as Exhibit 'B,' and, the court hereby expressly authorizes, empowers, and directs the petitioner to carry out the terms of said agreement in all of its particulars, and to that end hereby ratifies and confirms the same on behalf of those defendants who are under 21 years of age or are of unsound mind; the court specially finding that it will be to the best interests of said minors, etc., that said agreement, if ratified and confirmed, be carried out by the petitioner according to its tenor."

The appellants contend that the proposed contract does not involve a construction of the will, but purports to make such a disposition of

a part of the property as was not contemplated by the testator. But the question is whether a dissent from the will would not prevent the execution of the several trusts which the testator expressly created. In rendering the judgment the learned judge no doubt had in mind the equitable jurisdiction of the court over the property of infants and the preservation of the corpus of the estate for the benefit of all affected by the trusts. Indeed, he directed the petitioner to carry out the terms of the agreement in all its particulars, and he specially held that the best interests of the infants would thereby best be subserved. The object is not to destroy the trust but to preserve it. In fact the purpose of the decree is to carry into effect the testator's direction that the trustee deal with the property devised in as full and ample manner as he could have dealt with it had his life been prolonged.

It is unquestionable that courts of equity have general jurisdiction over the property of infants and that infancy alone is sufficient to sustain the right of supervision. The jurisdiction in all cases is complete and may be exercised in order to afford relief wherever it may be necessary to preserve and protect the estates and interests of those who are under age. The petition states facts and circumstances which invoke the jurisdiction of a court of equity to preserve the corpus of the estate and in this way to work out what the decree adjudges to be the best interests of the infant defendants. 3 Story's Eq. Jurisprudence, 14 ed., sec. 1742 *et seq.;* 10 R. C. L., 340, sec. 89; 31 C. J., 1035, sec. 97; *Morris v. Gentry,* 89 N. C., 248; *Tate v. Mott,* 96 N. C., 19.

We find no reason to disturb the judgment, and it is hereby

Affirmed.