BERENIECE BAILEY STELLINGS, AUDRIENNE BAILEY AUTRY AND
HUSBAND, J. MURCHISON AUTRY, GEORGE BAILEY AUTRY (SINGLE),
ISABEL STELLINGS HOLMES AND HUSBAND, E. MAYO HOLMES, JR.,
PRINCESS STELLINGS WILLIAMS AND HUSBAND, EDWARD S. WIL-
LIAMS, JR. v. AUDRIENNE ISABEL BAILEY AUTRY, E. MAYO
HOLMES, III, MARK R. HOLMES, S. GREGORY HOLMES, CHRIS-
TOPHER A. HOLMES, LAURAINE B. HOLMES, PRINCESS ANN WIL-
LIAMS, MARTHA M. WILLIAMS, EDWARD S. WILLIAMS, III, THE
UNBORN DESCENDANTS OF GEORGE W. BAILEY, AND WACHOVIA BANK
& TRUST COMPANY, TRUSTEE UNDER THE WILL OF GEORGE W.
BAILEY.

(Filed 15 June 1962.)

1. **Executors and Administrators § 31—**

A family agreement for the distribution of a testamentary trust at
variance with the clear intention of testator will not be approved for the
convenience of beneficiaries *in esse* at the expense of the ultimate bene-
ficiariies, but such agreement may be approved only when exigencies grow-
ing out of the trusts themselves or directly affecting the *corpus* or income
arise and such settlement is necessary to preserve the trust and effectuate
the intent of testator and is not adverse to the interests of minors and
unborn ultimate beneficiaries.

2. **Same— Under facts of this case no exigencies threatening validity
or dissipation of trusts existed so as to warrant approval of family
settlement.**

The trusts provided benefits in specified monthly sums to testator's
children, with descendants of deceased children to receive *per stirpes* the
income of their ancestor, with provision for the distribution of the
*corpus* and income from the trusts, less the stipulated monthly incomes,
to testator's lineal descendants when the rule against perpetuities should
require the termination of the trusts. Litigation was threatened relating
solely to the construction of the trust provisions and the determination of
the validity of the provisions relating to the duration of the trusts. The
parties entered into an agreement that the entire income from the trusts
should be paid to the descendants of testator *per stirpes*, with provision
for the distribution of the *corpus* to the descendants of testator 21 years
after the death of the last descendant who was alive at the time of
testator's death. *Held:* A construction of the trusts and the adjudication
of their duration would be necessary in order to determine whether the
family settlement was advantageous to the minor beneficiaries and lineal
descendants of testator thereafter born, and therefore the threatened
litigation is not such an exigency endangering the *corpus* of the estate
so as to warrant the court in approving the family settlement to the
detriment of the ultimate beneficiaries.

3. **Wills § 40—**

Provisions of a testamentary trust that the trusts should continue until
such time as "the law of perpetuities" should cause the trusts to be dis-
solved and that then the trust estates should be divided among testator's
lineal descendants *per stirpes*, are valid and the intent of testator must

be given effect and the trusts terminate 21 years after the death of the last survivor of testator's descendants who were alive at the time of testator's death.

**4. Wills § 27—**

A will must be construed to effectuate the intent of testator as expressed in the language employed, considered in the light of the conditions and circumstances existing at the time the will was made.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by Wachovia Bank & Trust Company, Trustee, and Napolean Barefoot, Guardian *Ad Litem* for Unborn Descendants of George W. Bailey, from a judgment of *Mintz, Resident Judge,* entered (by consent) in Chambers on November 28, 1961. From NEW HANOVER.

Plaintiffs' action is to obtain court approval of an alleged family settlement agreement dated December 1, 1959, and a judgment authorizing and directing Wachovia Bank & Trust Company, as Trustee under the will of George W. Bailey, to manage and disburse the income and principal of the trusts created by said will as provided in said agreement.

George W. Bailey died June 30, 1940. His will (dated June 22, 1937) was probated July 5, 1940. Wilmington Savings & Trust Company qualified as executor and as trustee. Upon settlement of the estate, it received, in its capacity as trustee, the stock in Wilmington Theatres, Inc., and the residue of the George W. Bailey estate, referred to in paragraphs 8 and 9 of the will, respectively.

On November 25, 1958, Wilmington Savings & Trust Company merged with Wachovia Bank & Trust Company, and thereafter Wachovia Bank & Trust Company has acted and is now acting as (successor) trustee.

George W. Bailey was survived by his wife, Isabel R. Bailey; two children, Bereniece Bailey Stellings and Audrienne Bailey Autry; and three grandchildren, Isabel Stellings (now Holmes), born August 7, 1925, Princess Stellings (now Williams), born November 23, 1929, and George Bailey Autry, born March 14, 1937.

Isabel R. Bailey, widow of George W. Bailey, died April 10, 1952.

Bereniece Bailey Stellings, Audrienne Bailey Autry and her husband, J. Murchison Autry, Isabel Stellings Holmes and her husband, E. Mayo Holmes, Jr., Princess Stellings Williams and her husband, Edward S. Williams, Jr., and George Bailey Autry, are the plaintiffs in this action.

After George W. Bailey died, one grandchild and eight great grandchildren were born. These nine persons, represented by Louis K. New-

ton, their Guardian *Ad Litem*, are defendants herein. This grandchild, Audrienne Isabel Bailey Autry, the child of (plaintiff) Audrienne Bailey Autry and J. Murchison Autry, was born May 17, 1941. Five of the great grandchildren, to wit, (1) E. Mayo Holmes, III, born March 25, 1951, (2) Mark R. Holmes, born October 11, 1952, (3) S. Gregory Holmes, born April 12, 1955, (4) Christopher A. Holmes, born May 10, 1957, (5) Lauraine B. Holmes, born January 9, 1959, are the children of (plaintiff) Isabel Stellings Holmes and E. Mayo Holmes. Three of the great grandchildren, to wit, (1) Princess Ann Williams, born June 5, 1953, (2) Martha M. Williams, born November 29, 1955, (3) Edward S. Williams, III, born September 3, 1958, are the children of (plaintiff) Princess S. Williams and Edward S. Williams, Jr.

The other defendants are the Unborn Descendants of George W. Bailey, represented by Napolean B. Barefoot, their Guardian *Ad Litem*, and Wachovia Bank & Trust Company, Trustee under the will of George W. Bailey.

This action was instituted December 16, 1960. Thereafter, on June 10, 1961, according to plaintiffs' evidence, George Bailey Autry married Bess Powell (Autry).

The pertinent dispositive provisions of the will of George W. Bailey are as follows:

> "EIGHTH: I give and bequeath unto The Wilmington Savings & Trust Company of Wilmington, North Carolina, in TRUST such stock as I may own in Wilmington Theatres, Inc., at the date of my death, to be held by said Trustee, and known as TRUST NUMBER ONE, for the following uses and purposes:
>
> "That it will take possession of said stock and collect the dividends therefrom, and after the payment of necessary expenses incident to this Trust, said Trustee shall pay from time to time quarterly, or when the same are received by it, twenty per cent (20%) of net dividends, or income, to my daughter, Bereniece Bailey Stellings, for life, and shall pay twenty per cent (20%) of the net dividends, or income, to my daughter, Audrienne Bailey Autry, for life, and shall pay ten per cent (10%) of the net dividends, or income, to my wife, Isabel R. Bailey, for life. The remaining fifty per cent (50%) shall be credited to the Trust hereinafter established and referred to as Trust No. Two.
>
> "At the death of my wife I direct that the Trustee under this Trust pay twenty-five (25%) per cent of the net income from said stock to my daughter, Bereniece Bailey Stellings, and twenty-five per cent (25%) to my daughter, Audrienne Bailey Autry,

and pay the remaining fifty per cent (50%) to trust No. Two hereinafter created.

"Upon the death of either of my two daughters the percentage of income from stock in Wilmington Theatres, Inc., which by my Trustee had prior to her death been paid to her shall after her death be paid to her child, or children, in equal shares per stirpes.

"Upon the death of my wife and the last surviving daughter I direct that the aggregate payments of fifty per cent (50%) of the income from Wilmington Theatres, Inc., Stock which had theretofore been made to my daughters shall continue to be paid to my legal descendants, per stirpes, until such time as the Law of Perpetuity shall cause this Trust to be dissolved, at which time my Trustee is directed to pay over the remainder of the corpus and accrued income to my legal descendants entitled to such property at that time, per stirpes."

(Paragraph EIGHTH also prescribes in detail the conditions under which the Trustee is authorized and directed to sell any or all of the stock in Wilmington Theatres, Inc., and reinvest the proceeds in other income-producing property, and provides that the Trustee distribute the income and *corpus* thereof "in the same manner and at the same time as it would have been distributed had the stock in Wilmington Theatres, Inc., not been sold.")

"NINTH: All the rest, residue and remainder of my property and estate, of every nature and kind whatsoever and wheresoever the same may be situate at the time of my death, I give, devise and bequeath unto The Wilmington Savings and Trust Company of Wilmington, North Carolina, IN TRUST, however and nevertheless, to be known as TRUST NUMBER TWO, for the following uses and purposes, that is to say:

"That it will take possession of the said property, collect the rents and income from the same, and after the payment by it of the expenses of this Trust, including taxes, insurance, necessary repairs and all other charges and expenses incident to the proper upkeep and maintenance of said property, I direct that it shall pay to my wife, Isabel R. Bailey, for life a sum from the income, supplemented from the principal if necessary, which when added to the installment payments received by her from the insurance companies, a list of which have been, or will be, placed with my Trustee, and the ten per cent (10%) from Wilmington Theatres, Inc., Stock under Trust No. One will aggregate not less than Five Hundred Dollars ($500.00) per month. In other words, it is my desire that my wife shall receive not less than Five Hundred

Dollars ($500.00) per month; first, from payments made by the various insurance companies and, secondly, from the ten per cent (10%) from stock earnings of Wilmington Theatres, Inc., supplemented, if found to be necessary by my Trustee, by income or principal from Trust No. Two. I have directed the various insurance companies, hereinbefore referred to, to forward to The Wilmington Savings and Trust Company, Trustee, monthly reports showing the aggregate payments made to my said wife and to my descendants; and the amount so paid, together with the amounts to be paid under Trust No. One, shall be a guide to my Trustee in determining the amount of income or principal, if any, to be supplemented from Trust No. Two to my said wife or descendants, as the case may be.

"During the lifetime of my wife I authorize my Trustee, herein named, to advance from time to time such sums from the income or corpus of this Trust as in its sole discretion may be necessary to supplement payments made to my said wife for hospitalization or other extreme emergencies.

"During the lifetime of my wife, Mrs. Isabel R. Bailey, I authorize and direct my Trustee to pay from the income or corpus of this Trust No. Two all taxes and insurance when due and repairs and maintenance when necessary against property referred to in Clauses Fourth and Fifth of this Will.

"Upon the death of my wife I direct that my Trustee, herein named, shall see that my two daughters receive not less than Two Hundred and Fifty Dollars ($250.00) per month each during their respective lives; these amounts to be made up, first, from the insurance payments which after the death of my wife will be paid by the Insurance Companies to my daughters, and, secondly, from the dividends of Wilmington Theatres, Inc., as hereinbefore bequeathed to them under Trust No. One, and, thirdly, from the income or principal of this Trust, if the Trustee finds it necessary to make any supplements from this Trust No. Two for said purposes.

"Upon the death of one of my daughters I direct that the payments which were being made to her shall be paid to her children in equal shares if she dies leaving more than one child; and if she dies leaving only one child, then such payments are to be made to such child.

"Upon the death of the last surviving daughter I direct that the aggregate payments of Five Hundred Dollars, as heretofore mentioned, shall be paid to my grandchildren per stirpes and to their descendants, per stirpes, during their respective lives, until such time as the Law of Perpetuity shall cause this Trust to be

dissolved, at which time my Trustee is directed to pay over the remainder of the corpus and accrued income to my legal descendants entitled to such property at that time, per stirpes."

The court's findings of fact include the following:

"19. The defendant, Wachovia Bank & Trust Company, Trustee under the will of George W. Bailey, together with its predecessor Trustee, the Wilmington Savings & Trust Company, has construed the Will of George W. Bailey as creating valid trusts, and has construed and is construing the trust provisions of said will as follows:

"(a) The corpus of Trust No. 1 consists of stock in Wilmington Theatres, Inc. During the life of Isabel R. Bailey, ten per cent of the dividend income from said stock was paid to Isabel R. Bailey, twenty per cent of said income was paid to each of the Testator's daughters, Bereniece Bailey Stellings and Audrienne Bailey Autry, plaintiffs herein, and fifty per cent of said income was paid to Trust No. 2. Since Isabel R. Bailey's death in 1952, twenty-five per cent of said income has been and shall be paid to each of the two daughters and the remaining fifty per cent to Trust No. 2. After the death of either of the two daughters, or both of them, the twenty-five per cent of said income previously payable to the deceased daughter shall be paid to the deceased daughter's descendants, per stirpes, and the remaining income (the fifty per cent above mentioned) shall continue to be paid to Trust No. 2. The income shall be so paid until twenty-one years after the last to die of any of George W. Bailey's children and grandchildren living at the time of his death, and at such time the corpus of Trust No. 1 shall be paid to Mr. Bailey's legal descendants, per stirpes.

"(b) Trust No. 2 principal and income (present and accumulated) shall be distributed only in the event and to the extent that the Trust No. 1 income paid to either of George W. Bailey's daughters, or her respective heirs as a group, when supplemented by any sums received by said persons by virtue of insurance contracts on the life of George W. Bailey purchased by him prior to his death, falls beneath the sum of Two Hundred and Fifty Dollars ($250.00) per month. Unless so distributed, all of Trust No. 2 principal and income shall be held and accumulated until twenty-one years after the last to die of any of George W. Bailey's children and grandchildren living at the time of his death, and at such time the entire principal and accumulated income shall be paid to George W. Bailey's legal descendants, per stirpes.

"20. Isabel Stellings Holmes has a present life expectancy of 35.92 years. Princess Stellings Williams has a present life expectancy of 39.48 years, and George Bailey Autry has a present life expectancy of 45.84 years. Under the present construction by Wachovia Bank and Trust Company, Trustee under the Will of George W. Bailey, of the trusts created therein, said trusts will terminate and the assets thereof be distributed, assuming no failure of the issue of George W. Bailey prior to the respective dates hereinafter set forth, (1) In the year 2017, if Isabel Stellings Holmes completes her life expectancy as set forth above, and is the survivor of Princess Stellings Williams and George Bailey Autry, or (2) in the year 2021, if Princess Stellings Williams completes her life expectancy as set forth above, and is the survivor of Isabel Stellings Holmes and George Bailey Autry, or (3) in the year 2026, if George Bailey Autry completes his life expectancy as set forth above, and is the survivor of Isabel Stellings Holmes and Princess Stellings Williams.

"21. Under the present construction by Wachovia Bank & Trust Company, Trustee under the Will of George W. Bailey, of the trusts established therein, the maximum distribution possible from Trust No. 2 is five Hundred Dollars ($500.00) per month."

Analysis of the voluminous exhibits, incorporated by reference in the findings of fact, discloses:

The *corpus* of Trust No. 1 consists of 630 shares of the common stock of Wilmington Theatres, Inc. On October 1, 1960, this stock (50% of all outstanding stock of the company) had a book value of $162,396.61. The company's total net worth of $324,793.23 on October 1, 1960, represented (assuming all the then liabilities of the company paid from cash on deposit) the following net assets:

| | | |
|---|---|---|
| Cash | $ 25,858.83 | |
| U. S. Government Securities | 243,541.75 | |
| Notes and Accounts Receivable | 2,711.64 | |
| Total Current Assets | | $272,112.22 |
| Land and Buildings (Less depreciation) | 51,061.66 | |
| Prepaid Expense | 1,619.35 | |
| Total other assets | | 52,681.01 |
| Total Net Assets (Net Worth) | | $324,793.23 |

The *corpus* of Trust No. 2 on May 5, 1960, consisted of conservative investments of a total (acquisition) value of $154,132.42. These assets

were acquired principally by investment of the income received from Trust No. 1 and income from such investments.

The exhibits show the receipts and disbursements of Trust No. 1 for the twenty-one years beginning July 5, 1940, and ending May 5, 1961.

During the (approximately) twelve years from July 5, 1940, to April 10, 1952, 10% of the income of Trust No. 1 was received by Isabel R. Bailey, widow of George W. Bailey; and, during this period, the widow received all of the annual payments from insurance provided by George W. Bailey. The respective amounts received by the widow from Trust No. 1 for each of these twelve years was: (1) $2,000.00, (2) $2,500.00, (3) $3,250.00, (4) $2,750.00, (5) $6,500.00, (6) $2,000.00, (7) $6,750.00, (8) $4,000.00, (9) $3,250.00, (10) $4,-000.00, (11) $5,000.00, (12) $3,500.00.

During said period of (approximately) twelve years, each of the two daughters, Bereniece Bailey Stellings and Audrienne Bailey Autry, received these amounts, being 20% of the income of Trust No. 1, to wit: (1) $4,000.00, (2) $5,000.00, (3) $6,500.00, (4) $5,500.00, (5) $26,000.00, (6) $4,000.00, (7) $13,500.00, (8) $8,000.00, (9) $6,500.00, (10) $8,000.00, (11) $10,000.00, (12) $7,000.00.

During the remaining (approximately) nine years, each of the two daughters received these amounts, being 25% of the income of Trust No. 1, to wit: (13) $7,500.00, (14) $7,875.00, (15) $3,125.00, (16) $6,250.00, (17) $4,875.00, (18) $3,250.00, (19) $3,250.00, (20) $3,-000.00, (21) $2,250.00. During this nine-year period each also received annual payments from insurance provided by George W. Bailey as follows: (13) $2,523.50, (14) $2,523.50, (15) $3,886.00, (16) $3,886.00, (17) $1,900.00, (18) $1,900.00, (19) $1,900.00, (20) $1,900.00, (21) $1,900.00.

During said period of twenty-one years, these amounts were received by Trust No. 2 from Trust No. 1, being 50% of the income of Trust No. 1 in each of said years, to wit: (1) $10,000.00, (2) $12,500.00, (3) $16,250.00, (4) $13,750.00, (5) $32,500.00, (6) $10,000.00, (7) $33,750.00, (8) $20,000.00, (9) $16,250.00, (10) $20,000.00, (11) $25,000.00, (12) $17,500.00, (13) $15,000.00, (14) $15,750.00, (15) $6,250.00, (16) $12,500.00, (17) $9,750.00, (18) $6,500.00, (19) $6,500.00, (20) $6,000.00, (21) $4,500.00.

In each of the twenty-one years, each of the two daughters received from Trust No. 1 and insurance payments an amount in excess of $250.00 per month; and, except for the last year, May 5, 1960 — May 5, 1961, each received from Trust No. 1 alone, exclusive of insurance payments, $250.00 per month or more. Up to now, under the trustee's said construction of the will of George W. Bailey, there has been *no* disbursement from Trust No. 2 to any beneficiary.

The alleged family settlement agreement dated December 1, 1959, was entered into and executed by plaintiff Bereniece Bailey Sutton *(sic)*, (referred to as a free-trader under G.S. § 52-6), plaintiff Audrienne Bailey Autry and J. Murchison Autry, plaintiff George Bailey Autry (single), as parties of the first part, and plaintiff Isabel Stellings Holmes and E. Mayo Holmes, Jr., and plaintiff Princess Stellings Williams and Edward S. Williams, Jr., as parties of the second part.

After recitals, the alleged family settlement agreement provides:

"NOW, THEREFORE, WITNESSETH:

"In order to avoid the publicity attendant upon a family controversy or dispute and to preserve the peace, honor, and dignity of the family of George W. Bailey, to effect his testamentary intentions as clearly understood by the parties hereto, to avoid expensive, venturesome, extensive and disastrous litigation, with its attendant risks and uncertainties, to provide security and protection for the family of George W. Bailey, and to protect the ultimate takers of the trusts heretofore mentioned from distasteful and detrimental family environment the Parties of the First Part and the Parties of the Second Part agree with and between themselves and each other that the trusts established under the Will of George W. Bailey, as recorded in Will Book O, page 432, in the office of the Clerk of the Superior Court of New Hanover County, shall be interpreted and construed as follows:

"TRUST NO. 1

"The Trustee of Trust No. 1 shall have the power, right and duty to retain possession of the corpus of Trust No. 1 and to collect the income thereon, and after the payment of necessary expenses incident to said trust, said Trustee shall pay from time to time quarterly, or when the same is received by it, twenty-five per cent (25%) of said net income to Bereniece Bailey Sutton *(sic)* during her life, and twenty-five per cent (25%) to Audrienne Bailey Autry during her life, and shall pay the remaining fifty per cent (50%) to Trust No. 2.

"Upon the respective deaths of Bereniece Bailey Sutton and Audrienne Bailey Autry, the percentage of net income, which prior to such death had been paid by the Trustee to the decedent, shall after such death be paid to the descendants of the decedent per stirpes, during their respective lives. All such payments shall continue to be made until twenty-one years after the death of the last survivor of Bereniece Bailey Sutton, Audrienne Bailey

Autry, George Bailey Autry, Princess Stellings Williams, and Isabel Stellings Holmes; and at said time, Trust No. 1 shall terminate, and the Trustee shall pay over all of the corpus of Trust No. 1, together with any other funds held in said Trust, to the legal descendants, under the law of North Carolina, of George W. Bailey, per stirpes.

"The Trustee shall dispose of the stock of Wilmington Theatres, Inc., presently held by it (the same comprising the entire corpus of Trust No. 1) only upon the written consent of Bereniece Bailey Sutton and Audrienne Bailey Autry, or the survivor of the same. After the death of Bereniece Bailey Sutton and Audrienne Bailey Autry, said stock may be sold in whole or in part by said Trustee at any time, and upon such terms as to it seems proper, if in the discretion of said Trustee such a sale appears to be in the best interest of said trust.

"While said stock is held in Trust No. 1, said stock shall be voted by the said Trustee, jointly with Bereniece Bailey Sutton and Audrienne Bailey Autry, or the survivor of the latter two parties. Upon the death of Bereniece Bailey Sutton and Audrienne Bailey Autry, said stock shall from time to time be voted by and in the sole discretion of the said Trustee.

"In the event the stock of Wilmington Theatres, Inc. held by Trust No. 1 is sold, the proceeds shall be invested in other income producing real or personal property, such investment to be approved by Bereniece Bailey Sutton and Audrienne Bailey Autry, or the survivor of them; after the death of said survivor such investments may be made as are approved by the Trustee; said property to be held and the proceeds invested and reinvested from time to time, and the income and corpus thereof distributed in the same manner and at the same time as the income and corpus of Trust No. 1 would have been distributed had the stock in Wilmington Theatres, Inc. not been sold.

## "TRUST NO. 2

"The Trustee shall have the power, right and duty to retain possession of the corpus of Trust No. 2, and all of the income accrued by said trust from the time said trust was established to the beginning of the current trust year. Said sum (being all funds held in Trust No. 2 on the aforesaid date, including the aforesaid corpus and the aforesaid accrued income) shall hereinafter be referred to as the corpus of Trust No. 2 for the purposes of this agreement.

"The Trustee shall collect the rents and income from the corpus of Trust No. 2 (as heretofore defined), and after payment by it of the expenses of Trust No. 2, including taxes, insurance, necessary repairs, and all other charges and expenses incident to the proper upkeep and maintenance of said property, the Trustee shall pay all of the net income received after the beginning of the current trust year (said date being on or about May 7, 1959) by said Trust No. 2, from whatever source derived, including all net income received from Trust No. 1, equally to Bereniece Bailey Sutton during her life, and to Audrienne Bailey Autry during her life. Upon the death of Bereniece Bailey Sutton or Audrienne Bailey Autry, the net income which prior to such death had been paid by the Trustee to the decedent, shall be paid to the descendants of said decedent, per stirpes, during their respective lives. All such payments shall continue to be made until twenty-one years after the death of the last survivor of Bereniece Bailey Sutton, Audrienne Bailey Autry, George Bailey Autry, Princess Stellings Williams and Isabel Stellings Holmes; and at said time, the Trustee shall pay over all of the corpus (as heretofore defined for the purposes of this agreement) of Trust No. 2, together with any other funds held in said trust, to the legal descendants, under the law of North Carolina, of George W. Bailey, per stirpes.

"In the event that the sums to be paid to Bereniece Bailey Sutton and Audrienne Bailey Autry, or their descendants, from Trust No. 1 and Trust No. 2, as heretofore set forth in this agreement, should fail to aggregate Five Hundred Dollars ($500.00) per month, when supplemented by any sums received by said persons by virtue of insurance contracts on the life of George W. Bailey purchased by him prior to his death, then the Trustee shall pay such amount from the corpus (as heretofore defined) of Trust No. 2 as will, together with the sums heretofore described, aggregate Five Hundred Dollars ($500.00) per month. All sums so paid from Trust No. 2 shall be paid in the same proportions and to the same persons as are entitled to receive income of Trust No. 1 and Trust No. 2 as hereinabove set forth.

"The Trustee shall have the power, right and duty to transfer, set over, assign, sell, convey, and make necessary conveyances therefor, for such prices and upon such terms as it may deem best, any of the property devised and bequeathed to it under Trust No. 2 of the Will of George W. Bailey, or received through the Will of Isabel R. Bailey for the benefit of Trust No. 2, and to invest from time to time the proceeds of any such sale or sales in

such income producing real and/or personal property as may be most advantageous for the proper administration of Trust No. 2, the same to be held by the Trustee in the same plight, and under the same conditions as the property so sold. All investments made for the benefit of Trust No. 2 shall be made with the written approval of Bereniece Bailey Sutton and Audrienne Bailey Autry, or the survivor. After the death of Bereniece Bailey Sutton and Audrienne Bailey Autry, investments of the corpus (as heretofore defined) of Trust No. 2 shall be made at the direction of the Trustee.

## "BOTH TRUSTS

"Should Bereniece Bailey Sutton die and there be a failure of her descendants prior to the termination of Trust No. 1 and Trust No. 2, as heretofore set forth, all sums payable to the descendants of Bereniece Bailey Sutton under the terms of this agreement shall become payable to the descendants, under North Carolina law, of George W. Bailey, per stirpes, during their respective lives. Should Audrienne Bailey Autry die and there be a failure of her descendants prior to the termination of Trust No. 1 and Trust No. 2, as heretofore set forth, all sums payable to the descendants of Audrienne Bailey Autry under the terms of this agreement shall become payable to the descendants under North Carolina law of George W. Bailey, per stirpes, during their respective lives. Notwithstanding anything hereinabove set forth to the contrary, upon a failure of legal descendants of George W. Bailey under North Carolina law, Trust No. 1 and Trust No. 2 shall terminate, and all sums held in said trusts shall be paid over to the University of North Carolina."

The court's findings of fact include the following:

"22. It was and is the sincere and earnest conviction and opinion of the plaintiffs that under the Trustee's present interpretation of the Will of George W. Bailey, ANY material distributions from Trust No. 2 are most unlikely for reasons hereinafter set forth. If Trust No. 2 income or principal were to be distributed, however, it is the plaintiffs' opinion that such income would be distributed to George W. Bailey's descendants until circa 2021, and consequently, such payments would be made to at LEAST three generations — children, grandchildren and great-grandchildren. There are presently two children of George W. Bailey, and four grandchildren. There are presently eight great-grandchildren of George W. Bailey, and there may be additional great-grand-

children born hereafter. It is the belief of the plaintiffs that when the class of great-grandchildren closes, that said class will number approximately twelve persons. Under the plaintiffs' beliefs and convictions as heretofore set forth, it is the plaintiffs' further belief and conviction that the maximum monthly payments to beneficiaries from Trust No. 2 would be, therefore, Two Hundred and Fifty Dollars ($250.00) to each child at the 'children' level, One Hundred and Twenty-Five Dollars ($125.00) to each grandchild at the 'grandchildren' level, and about Forty-Two Dollars ($42.00) to each great-grandchild at the 'great-grandchildren' level all of such sums constituting only POSSIBLE payments. It is incredible to the plaintiffs that George W. Bailey wished or intended to provide such meager and remote benefits to his all inclusive descendants at the expense of his two daughters, the natural objects of his bounty.

"23. It is the belief of the plaintiffs that any material distribution from Trust No. 2 is most unlikely under the Trustee's interpretation of the will, as it is their belief that fifty percent of Trust No. 1 income is almost certain to produce sufficient funds to make the Five Hundred Dollars ($500.00) monthly payments which the trusts' life tenants are guaranteed. This belief is predicated upon the income record of Trust 1 since the establishment of the same, said income record being set forth in Schedule A of plaintiffs' Exhibit IV. The plaintiffs, therefore, are of the opinion that all or substantially all of Trust No. 2 income, under the Trustee's present interpretation of the Will, will be accumulated until the final distribution of trust assets circa 2021. It is the conviction of the plaintiffs that George W. Bailey never intended such an accumulation, for if a final distribution of the trusts' assets occurs circa 2021, it will most likely be made to George W. Bailey's great-great-grandchildren whom he never knew or cared for and who, in all probability, will, in the opinion of the plaintiffs, number about 36. It is the further belief of the plaintiffs that the prospective annual income of Trust No. 2 (exclusive of Wilmington Theatres, Inc. dividends) will itself, in all probability, exceed the maximum possible distribution from the same of Five Hundred Dollars ($500.00) per month. This belief is predicated upon the past income record of Trust No. 2, as set forth in Schedule 3 of plaintiffs' Exhibit IV.

"24. Believing that the Trustee's present interpretation of George W. Bailey's will was contrary to the latter's intentions as expressed therein, was at the expense of and at odds with the natural objects of his bounty, and was inherently inequitable, and

that the accumulation of Trust No. 2 income as heretofore described fostered indecent disinheritance of those having natural claims on the testator's worldly goods, and that the Trustee's present interpretation resulted in an indiscreet hoarding of income at the expense of the ancestral and parental environment of the ultimate takers of the trusts' corpus, Bereniece Bailey Stellings, Audrienne Bailey Autry and husband, J. Murchison Autry, and George Bailey Autry, employed counsel to advise them with regard to the trusts established under the will of George W. Bailey. Said persons were advised by said counsel that there were sound legal grounds for (1) a suit to construe the trusts to permit the Trustee to pay the present Trust beneficiaries such amount of Trust No. 2 income, ACCUMULATED or PROSPECTIVE, as is compatible, in the judgment of the Trustee, with the beneficiaries' needs and position, and (2) a suit to declare the Trusts void ab initio for the reason that they violate the Rule Against Perpetuities. Said persons desired and were prepared to institute such suits.

"25. Isabel Stellings Holmes and husband, E. Mayo Holmes, Jr. and Princess Stellings Williams, and husband, Edward S. Williams, Jr. were and are opposed to the institution of the legal actions heretofore mentioned and relief to be sought therein for that (a) the first action, if successful, would make possible the distribution of Trust No. 2 income heretofore accumulated, thus causing possible loss to said persons of said sums and the income thereof, and (b) the second action, if successful, would completely extinguish the rights of said persons to share in any fashion in the estate of George W. Bailey.

"26. If the threatened litigation referred to above should be begun, it would act as a constant barrier to the establishment of family peace, and would doubtless attract wide attention and publicity which would tend to expose to the public gaze intimate family affairs which should be guarded within the family circle. Furthermore a trial of said actions would disrupt and tend to destroy the peace, honor and dignity of the family resulting in the embarrassment and humiliation of the members thereof, and would plunge the family into litigation which would doubtless extend for a long period of time and would be attended by an enormous amount of expense, uncertainty and risk, and would defeat or seriously jeopardize the testamentary trusts of George W. Bailey.

"27. The disputes involved in the threatened litigation are bona fide disputes, parties thereto making adverse contentions in good

faith; a determination of the rights of the parties by carrying said litigation to a conclusion would involve long and expensive litigation and a determination of difficult and doubtful questions of fact and of law; the result of a trial in the Superior Court would be uncertain; the losing parties would doubtless appeal to the Supreme Court of North Carolina, and as a consequence, further trials might be necessary before reaching a conclusion of such threatened litigation. The final outcome of said litigation would be doubtful and would be attended with risk on the part of all parties. Leaving the parties to work out their rights in said litigation would not only permanently impair the honor and dignity of the family and result in permanent family discord, but would also seriously jeopardize the trusts involved.

"28. In order to avoid the publicity attendant upon a family controversy or dispute and to preserve the peace, honor and dignity of the family of George W. Bailey, to effect his testamentary intentions as clearly understood by the plaintiffs herein, to avoid expensive, venturesome, extensive and disastrous litigation, with its attendant risks and uncertainties, to provide security and protection for the family of George W. Bailey and to protect the ultimate takers of the trusts heretofore mentioned from distasteful and detrimental family environment, the plaintiffs entered into an agreement between themselves and each other providing that the trusts established under the will of George W. Bailey should be interpreted, construed and administered pursuant to the terms of said agreement.

"29. Said agreement was entered into by the plaintiffs after long, careful and painstaking consideration of the same, and plaintiffs have taken into consideration all of the facts and circumstances in connection therewith, and have sincerely sought to arrive at said agreement so as to put an end to threatened family litigation and dissension and to re-establish peace and concord.

"30. The agreement entered into by the plaintiffs is a written agreement dated December 1, 1959, and a copy of said agreement is attached to the complaint herein as Exhibit A, and is hereby referred to for all the terms thereof, and is made a part of this finding of facts as fully as if set out herein in full, and this action has been instituted by the plaintiffs herein for the purpose of obtaining an adjudication of the Court as to the validity of said agreement, and in order that all fiduciaries may be properly advised and instructed by the Court as to the validity thereof and their duties in regard thereto.

"31. The plaintiffs are keenly interested in protecting the interest of the minors involved and the rights of unborn children and are of the opinion that the aforesaid agreement will be for the best interests of all persons interested in the assets of said trust estates, both born and unborn, and that approval of said agreement will preserve for them a substantial portion of the trust estates free from the risk and dissipation which might destroy and wipe out their entire interest in said estates or in material parts thereof.

"32. The Wilmington Savings & Trust Company and the Wachovia Bank & Trust Company have at all times acted in good faith in administering upon said estate and in interpreting, executing, managing and distributing said trusts.

"33. The settlement of the threatened litigation under the terms of the family agreement as attached to the complaint marked Exhibit A is for the best interest of all the parties, including the present, prospective and contingent beneficiaries of the trusts under the will of George W. Bailey, and it is for the best interests of Audrienne Isabel Bailey Autry, E. Mayo Holmes, III, Mark R. Holmes, S. Gregory Holmes, Christopher A. Holmes, Lauraine B. Holmes, Princess Ann Williams, Martha M. Williams, and Edward S. Williams, III, and all other infants who are parties to this action, and the unborn descendants of George W. Bailey; the family agreement will prevent dissipation and waste and will more nearly accomplish the primary objects and effectuate the real intentions of the creator of said trusts than could be accomplished by rejection of said family agreement and a relegation of the parties to a family strife and long-drawn-out litigation."

Judgment, approving the alleged family settlement agreement of December 1, 1959, was entered; and it was adjudged that this agreement, a copy of which is attached to the complaint as Exhibit A, is "legally binding upon the parties thereto" and "upon all other parties and interests, including trustees, guardians ad litem, minors and unborn persons in interest." It was adjudged further that "said Exhibit A shall, from the 7th day of May 1959, until the termination of said trusts, constitute the terms and provisions of the trusts created under the will of George W. Bailey," and "that said Exhibit A was intended by the parties to this action to be irrevocable, and such agreement and the aforesaid trusts as altered thereby are hereby adjudged to be irrevocable."

Plaintiff Bereniece Bailey Stellings is the same person referred to in the alleged family settlement agreement as Bereniece Bailey Sutton.

Defendants Napolean B. Barefoot, Guardian *Ad Litem* for the unborn descendants of George W. Bailey, and Wachovia Bank & Trust Company, Trustee under the will of George W. Bailey, excepted to designated findings of fact and conclusions of law and appealed from said judgment.

*Poisson, Marshall, Barnhill & Williams for defendant Wachovia Bank & Trust Company and defendant Napolean Barefoot, Guardian Ad Litem, appellants.*
*Carter, Murchison, Fox & Newton for plaintiffs, appellees.*

BOBBITT, J.  With reference to Trust No. 1, the provisions of the will as construed by the trustee are not materially affected by the alleged family settlement agreement. Each of the two daughters received 20% of the income of Trust No. 1 until the death of their mother; and since then each has received and will continue to receive for life 25% of the income thereof. Too, upon the death of each daughter, the income she would receive if living is to be paid to her descendants, *per stirpes*, until termination of the trust.

But, with reference to Trust No. 2, the alleged family settlement agreement does materially alter the provisions of the will as construed by the trustee. It provides, in effect, that the assets of Trust No. 2 as of May 7, 1959, consisting largely of investments made from income theretofore received from Trust No. 1 and income from such investments, shall thereafter constitute the *corpus* of Trust No. 2; that there shall be no further investment of income of Trust No. 2; that one-half of *all* income thereafter received by Trust No. 2, whether from Trust No. 1 or from assets in Trust No. 2 on May 7, 1959, shall be paid to each of the two daughters for life; and that upon the death of each daughter the amount she would receive if living shall be paid to her descendants, *per stirpes*, until termination of the trust. (Note: Plaintiffs alleged the assets of George W. Bailey, at the time of his death, exclusive of the Wilmington Theatres, Inc., stock, "consisted of a small amount of bonds.")

The two daughters, and the three grandchildren who survived George W. Bailey, are plaintiffs herein. They are the parties to the alleged family settlement agreement and are the only present and prospective beneficiaries of the trusts living on June 30, 1940, when George W. Bailey died. Under the trustee's construction, the trusts terminate twenty-one years after the death of the last survivor of these five persons; and none of them will ever receive any part of the *corpus*. Obviously, the administration of the trusts in accordance with the alleged family settlement agreement will substantially increase the

income to be presently received from Trust No. 2 by the two daughters and the prospective income to be received by said three grandchildren.

Under the trustee's construction, the trusts terminate and the *corpus* is distributable twenty-one years after the death of the last survivor of the two daughters and said three grandchildren; and, when this event occurs, the persons to receive the *corpus* will be the named defendants, who are minors, or lineal descendants of George W. Bailey hereafter born. Clearly, the *corpus* of Trust No. 2 to be then distributed will be much greater if Trust No 2 is administered in accordance with the trustee's construction rather than in accordance with the alleged family settlement agreement.

With reference to family differences allegedly composed by the settlement agreement, these facts are noted: Only the two daughters and three grandchildren who survived George W. Bailey were involved in such family differences. Moreover, their differences relate to *whether actions should be instituted* (1) for construction of the trust provisions of the will of George W. Bailey, and (2) to declare invalid the provisions relating to the duration of the trusts.

There is no evidence to support the findings that the proposed or threatened actions "would plunge the family into litigation . . . for a long period of time and would be attended by an enormous amount of expense" and that "the family agreement will prevent dissipation and waste" of the assets of the trusts. Nothing appears to indicate the proposed or threatened actions would be more protracted, involved or expensive than the present litigation.

Moreover, we find no evidence to support findings that approval of the alleged family settlement agreement will allay family dissensions. Conceding the differences as *between the plaintiffs* as to whether such suits should be instituted were composed by the settlement agreement, approval thereof may well become quite disturbing to the named defendants (now minors) and to lineal descendants of George W. Bailey hereafter born. In this connection, it is noted that the named defendants are (1) a child of plaintiff Audrienne Bailey Autry, (2) five children of plaintiff Isabel Stellings Holmes, and (3) three children of plaintiff Princess Stellings Williams; and further, that the guardian *ad litem* for these nine named defendants did not appeal from the judgment or appear by brief or otherwise in this Court.

The will of George W. Bailey was probated July 5, 1940; and since then the trustee has administered the trusts in accordance with its construction of the provisions of the will relating thereto.

The present factual situation differs from that in cases where a family settlement agreement is entered into to avoid threatened destruction of testamentary trusts by caveat, *e.g., Wagner v. Honbaier,*

248 N.C. 363, 103 S.E. 2d 474, or by dissent, *e.g., Bank v. Alexander,*
188 N.C. 667, 125 S.E. 385. Too, it differs from that in cases where
pending or threatened litigation involves multiple complicated ques-
tions, factual as well as legal, and is of such nature as to dissipate the
trust estate and adversely affect the interests of minors, *e.g., Reynolds
v. Reynolds,* 208 N.C. 578, 182 S.E. 341. Here, the proposed or threat-
ened suits related solely to the construction of the trust provisions of
the will and the determination of the validity of the provisions relating
to the duration of the trusts.

It may be conceded that plaintiffs were uncertain as to the outcome
of the proposed or threatened suits in the superior court or in this
Court. Even so, the court must consider the trust provisions of the
will. Whether the alleged family settlement agreement is advantageous
to the nine named defendants and the lineal descendants of George W.
Bailey hereafter born must be determined in relation to their rights
under the will of George W. Bailey as construed by this Court.

There are material limitations upon the right to alter by family
settlement agreement the terms of a testamentary trust. *Carter v.
Kempton,* 233 N.C. 1, 62 S.E. 2d 713; *Redwine v. Clodfelter,* 226 N.C.
366, 38 S.E. 2d 203; *Trust Co. v. Buchan,* 256 N.C. 142, 153, 123 S.E.
2d 489. These limitations, as stated by *Barnhill, J.* (later *C.J.*), in
*Carter v. Kempton, supra,* are as follows:

"(1) The will creating a trust is not to be treated as an in-
strument to be amended or revoked at the will of devisees or to be
sustained *sub modo* only after something has been sweated out
of it for the heirs at law. The power of the court is exercised not
to defeat or destroy, but to preserve, it.

"(2) The rule that the law looks with favor upon family agree-
ments does not prevail when the rights of infants are involved.
A court of equity looks with a jealous eye on a contract that
materially affects the rights of infants. Their welfare is the guid-
ing star in determining its reasonableness and validity.

"(3) A court of equity will not modify or permit the modifica-
tion of a trust on technical objections merely because its terms
are objectionable to interested parties or their welfare will be
served thereby. It must be made to appear that some exigency,
contingency, or emergency has arisen which makes the action of
the court indispensable to the preservation of the trust and the
protection of infants. (Citations)

"(4) To invoke the jurisdiction of a court of equity the con-
dition or emergency asserted must be one not contemplated by
the testator and which, had it been anticipated, would undoubted-

ly have been provided for; and in affording relief against such exigency or emergency, the court must, as far as possible, place itself in the position of the testator and do with the trust estate what the testator would have done had he anticipated the emergency. (Citation) It is not the province of the courts to substitute their judgment or the wishes of the beneficiaries for the judgment and wishes of the testator. The controlling objective is to preserve the trust and effectuate the primary purpose of the testator. (Citations)

"(5) The exigency, contingency, or emergency necessary to invite the intervention of the courts must relate to and grow out of the trust itself or directly affect the *corpus* thereof or the income therefrom."

In the present case there is no exigency, contingency or emergency related to or growing out of the trusts themselves or directly affecting the *corpus* thereof or the income therefrom. It appears the trusts are well preserved. The questions presented relate solely to the respective interests of present and future beneficiaries.

George W. Bailey's will clearly designates the assets of each trust and the beneficiaries thereof, present and prospective. The will does *not* provide, expressly or by implication, that "the Trustee shall pay all of the net income received after the beginning of the current trust year (said date being on or about May 7, 1959) by said Trust No. 2, from whatever source derived, including all net income received from Trust No. 1, equally to Bereniece Bailey Sutton during her life, and to Audrienne Bailey Autry during her life," or that "(u)pon the death of Bereniece Bailey Sutton or Audrienne Bailey Autry," *such* net income "shall be paid to the descendants of said decedent, per stirpes, during their respective lives." These (quoted) provisions of the alleged family settlement agreement are in direct conflict with the trust provisions of the will.

The only provision of the will, with reference to disbursements to be made to the two daughters from Trust No. 2 (and, upon the death of each daughter to her descendants, *per stirpes*, until termination of the trusts), is the following: "Upon the death of my wife I direct that my Trustee, herein named, shall see that my two daughters receive not less than Two Hundred and Fifty Dollars ($250.00) per month each during their respective lives; these amounts to be made up, first, from the insurance payments which after the death of my wife will be paid by the Insurance Companies to my daughters, and, secondly, from the dividends of Wilmington Theatres, Inc., as hereinbefore bequeathed to them under Trust No. One, and, thirdly, from the income or principal of this Trust, if the Trustee finds it necessary to make any

supplements from this Trust No. Two for said purposes." Clearly, this provision contemplates payments to the testator's daughters from Trust No. 2 only in the event the income of each from the insurance provided by the testator and from the Wilmington Theatres, Inc., stock is less than $250.00 per month and in such event to supplement the income only to the extent necessary to provide each an income of $250.00 per month.

Even so, plaintiffs contend there is a serious question as to whether the trusts are void *ab initio* on the ground the provisions thereof violate the rule against perpetuities. If this is a serious question, it arises solely from the provisions of the will and must be resolved by the court before the court can determine whether the alleged family settlement agreement is advantageous to the nine named defendants and the lineal descendants of George W. Bailey hereafter born. The court cannot discharge its judicial responsibility by a declaration that a serious legal question of this nature is presented. Presently, we are not concerned with a will where, on account of vagueness, ambiguity or conflict in the provisions thereof, the testator's intentions cannot be ascertained, *e.g., Bank v. Hendley,* 229 N.C. 432, 50 S.E. 2d 302.

"The rule against perpetuities prohibits the creation of future interests or estates which by possibility may not become vested within a life or lives in being *at the time of the testator's death* or the effective date of the instrument creating the future interest, and twenty-one years thereafter, together with the period of gestation when the inclusion of the latter is necessary to cover cases of posthumous birth. Stated affirmatively, the rule against perpetuities allows the postponement of the vesting of an estate or interest for the period of lives in being and twenty-one years and the period of gestation." (Our italics) 41 Am. Jur., Perpetuities and Restraints on Alienation § 3; 70 C.J.S., Perpetuities § 4; *Parker v. Parker,* 252 N.C. 399, 113 S.E. 2d 899, and cases cited therein.

Plaintiffs, in support of their contention *that a serious question* is presented, cite *Fitchie v. Brown,* 211 U.S. 321, 29 S. Ct. 106, 53 L. Ed. 202, in which the will under consideration provided: "The balance, residue, or remainder of my estate is to be placed in trust for as long a period as is legally possible, the termination or ending of said trust to take place when the law requires it under the statute." The will directed that the trustee "devote sufficient of the annual income" toward paying specified amounts to named annuitants for life, "and then to their heirs." The Supreme Court of the United States affirmed a decision of the Supreme Court of the Territory of Hawaii ordering that a decree be entered directing the trustee to pay the specified amounts to the named annuitants "for and during their respective

lives, and thereafter to pay the same to their heirs respectively until the end of twenty-one years after the death of the last survivor of all the said annuitants, . . . and, at the end of said twenty-one years, to divide the trust fund and its accumulated and unapplied income as required by the direction in that behalf contained in the will."

In *Farmers Nat. Bank of Cynthiana v. McKenney* (Ky.), 264 S.W. 2d 881, cited by plaintiffs, the will provided that the income from the trust should be paid in equal parts to the testator's three half sisters as long as they lived, and upon the death of each, her share should be paid to "her heirs, if any as long as the law allows." Commissioner Clay, speaking for the court, said: "If he (the testator) had disposed of the corpus of the trust or devised and bequeathed the fee in his property to some ultimate beneficiary, we may have had some key to his intention." Again: ". . . we find the principal vice of Item IV to be such uncertainty that we cannot ascertain the true purpose or intent of the testator." The trust provision was held void *for uncertainty*.

George W. Bailey's lineal descendants are the only beneficiaries, present or prospective, of the trusts created by his will. The provision as to the termination of each trust is in the same language, to wit: ". . . until such time as the Law of Perpetuity shall cause this Trust to be dissolved, at which time my Trustee is directed to pay over the remainder of the corpus and accrued income to my legal descendants entitled to such property at that time, per stirpes."

The provisions of George W. Bailey's will manifest his clear intention that the trusts shall continue as long as permissible under the "Law of Perpetuity." His deliberate use of this term must be given significance. It indicates the testator intended, wisely or unwisely, that the trusts should continue as long as legally permissible. To determine the duration of the trusts otherwise than according to the "Law of Perpetuity" would defeat rather than effectuate the testator's intent. To effectuate the testator's intent the "Law of Perpetuity" must be related to the beneficiaries, present and prospective, who were living on June 30, 1940, when George W. Bailey died, the two daughters and three grandchildren; and in our opinion, and we so decide, the trusts, under the "Law of Perpetuity," terminate twenty-one years after the death of the last survivor of these five persons. Decision to this effect is, in our view, in full accord with the intention of the testator. It is also in accord with *Fitchie v. Brown, supra*.

It is noteworthy that the provision of the alleged family settlement agreement with reference to the termination of each trust and the trustee's construction are in accord as to *when* the trusts terminate.

But they differ greatly with reference to the value of the assets of Trust No. 2 to be distributed to the ultimate takers.

"In ascertaining the intent of the testator, the will is to be considered in the light of the conditions and circumstances existing *at the time the will was made." Trust Co. v. Waddell,* 237 N.C. 342, 75 S.E. 2d 151, and cases cited; *Trust Co. v. Wolfe,* 243 N.C. 469, 473, 91 S.E. 2d 246.

The clear intent of the testator, when he executed his will, was to provide for immediate payment of one-half of the income from his Wilmington Theatres, Inc., stock, the only asset of Trust No. 1, to designated beneficiaries and to provide (subject to the provision quoted above with reference to supplementing income from other sources to the extent necessary to provide each daughter $250.00 per month) for the accumulation and investment of the remaining one-half as assets of Trust No. 2. It is noted that this provision as to supplementing the income of each daughter, if necessary, did not become effective until the death of George W. Bailey's widow.

The record does not disclose the income received by George W. Bailey from his Wilmington Theatres, Inc., stock prior to June 22, 1937, the date of his will, or from then until his death on June 30, 1940. If the income therefrom during the earlier years of the trust exceeded the testator's reasonable expectations, each of the two daughters benefited thereby in receiving twenty and later twenty-five per cent of such income.

It does appear that, during the earlier years of the trusts, the income from the Wilmington Theatres, Inc., stock was substantially more than the income therefrom in recent years. Too, it appears the present assets of Wilmington Theatres, Inc., consist of conservative investments with the result that the income presently received by each of the two daughters therefrom is substantially less than the income each received therefrom in the earlier years of the trust.

We cannot know whether George W. Bailey, if now living, would make a different disposition of his estate. Nor is it our function to speculate as to what he would or might do under present circumstances. "The authority and responsibility to interpret or construe a will rest solely on the court. Its objective is to ascertain the intent of the testator, as expressed in the will, when he made it." *Trust Co. v. Wolfe, supra,* and cases cited. As stated recently by *Moore, J.,* in *Keesler v. Bank,* 256 N.C. 12, 20, 122 S.E. 2d 807: "It is contrary to the holdings and inclination of this Court to make a will for a decedent so as to meet the convenience and wishes of interested parties."

Undoubtedly, plaintiffs entered into and seek approval of the alleged family settlement agreement in good faith; and it may well be

it provides a more reasonable distribution. Even so, the distribution provided therein is not in accord with the intent of the testator, as expressed in the will, when he made it.

Since it substantially alters the provisions of the will of George W. Bailey as construed by this Court and does or may substantially impair without compensating benefits the interests of the nine named defendants and the interests of lineal descendants of George W. Bailey hereafter born, the alleged family settlement agreement cannot be approved by this Court. To what extent, if any, the interest of Audrienne Isabel Bailey Autry, the granddaughter of the testator born after his death, or of the other eight named defendants, great-grandchildren of George W. Bailey, or of any other grandchild, great-grandchild or lineal descendant of George W. Bailey hereafter born, will be impaired, cannot be foreseen. This will depend upon the date the trusts terminate and the identity of the ultimate takers. Suffice to say, the interest of certain of the lineal descendants of George W. Bailey, presently unidentifiable, will be seriously affected and impaired. Hence, the judgment of the court below is reversed.

It is unnecessary, in view of the foregoing disposition of this appeal, to consider whether the lineal descendants of George W. Bailey hereafter born would be bound by a judgment adverse to them. In this connection, see *McPherson v. Bank,* 240 N.C. 1, 81 S.E. 2d 386, and the provision of the 1955 statute now codified (in the 1961 Supplement) as G.S. § 1-65.2.

Reversed.

SHARP, J., took no part in the consideration or decision of this case.